J-S65029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| AARON HENRY SIMS, | |
| Appellant | No. 3212 EDA 2014 |

Appeal from the Judgment of Sentence November 14, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0006046-2013

BEFORE: BENDER, P.J.E., SHOGAN, and JENKINS, JJ.

MEMORANDUM BY SHOGAN, J.: **FILED NOVEMBER 24, 2015**

Appellant, Aaron Henry Sims, appeals from the judgment of sentence entered following his convictions of three counts of driving under the influence ("DUI"). We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> By way of background, Officer James Gibbas ("Officer Gibbas") currently works for the Towamencin Township Police Department. Officer Gibbas has made over fifty Driving Under the Influence ("DUI") arrests during his five year tenure with the Towamencin Township Police Department. Additionally, Officer Gibbas has received police training on detecting signs of DUI driving.
>
> At approximately 2:00 a.m. on Friday, May 17, 2013, Officer Gibbas was on patrol duty in a fully marked police car at the intersection of Forty Foot Road and Sumneytown Pike in Towamencin Township, Montgomery County, Pennsylvania. Due to the number of bars nearby, that intersection has a history of DUI arrests. Officer Gibbas was conducting a selective

enforcement of the intersection for DUI drivers at a time when the bars were closing.

While monitoring the intersection, Officer Gibbas observed Appellant driving a blue Ford Explorer, traveling southbound on Forty Foot Road. Officer Gibbas observed Appellant stop at a red light on Forty Foot Road and Sumneytown Pike. Officer Gibbas also observed a second vehicle ("Vehicle 2") abruptly pull behind Appellant's vehicle and stop at the red light. The stop was so abrupt that Officer Gibbas thought the second vehicle was going to crash into the rear end of Appellant's vehicle. Thereafter, Officer Gibbas observed a third vehicle ("Vehicle 3") pull up behind Vehicle 2 and stop at the red light.

Based on Vehicle 2's abrupt stop, Officer Gibbas decided to leave this monitoring site and follow the vehicles onto Sumneytown Pike once the light turned green. While Officer Gibbas was observing Vehicle 2 for DUI, he witnessed both Appellant's vehicle and Vehicle 2 drift across the double yellow line and then drift back into [their] respective lane. Officer Gibbas also observed both vehicles cross over the fog line before returning back into their respective lane of travel.

Officer Gibbas testified that he observed Appellant's vehicle drift at least three times within a one mile area. He also testified that Appellant's drifting was separate and apart from the second driver's drifting. Officer Gibbas admitted that he made his observations of Appellant's vehicle about six to seven car lengths away, with two other vehicles (Vehicle 2 and Vehicle 3) between their vehicles. Lastly, Officer Gibbas testified Appellant was otherwise compliant with all other traffic laws.

Based on his observations of Appellant's and Vehicle 2's traffic violations, Officer Gibbas turned on his sirens to conduct a traffic stop of the vehicles. All three vehicles in front of Officer Gibbas pulled over in response to the sirens. Officer Gibbas radioed to Sergeant Wainwright and Officer Mahaffey for assistance with the traffic stop. Vehicle 3 was investigated by Sergeant Wainwright and Officer Mahaffey and eventually [was] permitted to leave.

Both parties stipulated at the hearing that Sergeant Wainwright and Officer Mahaffey assisted Officer Gibbas with the investigatory detention of both Appellant's vehicle and Vehicle 2.

Specifically, both parties stipulated that Sergeant Wainwright asked Appellant a number of cursory questions, including where he was coming from. In response, Appellant admitted that he was coming from Margaritas Restaurant where he consumed two beers. Sergeant Wainwright conducted filed sobriety tests, which led to Appellant's arrest for DUI.

After Appellant was arrested, Officer Mahaffrey conducted an investigatory search of his car, discovering small zip lock bags of marijuana in the console that were seized for evidence. Appellant was taken to Lansdale Hospital, where he submitted to a chemical blood test.

On September 16, 2014, this court issued an order denying Appellant's Motion to Suppress.[1] A bench trial was held on November 14, 2014, where Appellant was found guilty of three counts of DUI[1][2]. This appeal followed.

[1] 75 Pa.C.S. § 3802(b), § 3802(a)(1) and §3802(d)(2).

Trial Court Opinion, 2/10/15, at 1-3. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

1. Did the trial court err in denying Appellant's Motion to Suppress any and all evidence used against him at trial?

Appellant's Brief at 6.

Appellant argues that Officer Gibbas failed to articulate with any specificity facts that would give him reasonable suspicion to stop Appellant. Appellant's Brief at 10. Instead, Appellant asserts that the testimony was

---

[1] Appellant filed a motion to suppress "any and all items of evidence seized by law enforcement officers." Motion to Suppress, 1/21/14, at 2.

[2] Appellant was sentenced to ninety days to five years of imprisonment, the costs of prosecution, and a $1,500.00 fine.

vague and included no evidence as to the severity of the drifting and uncertainty as to how many times it occurred. *Id.* Appellant further maintains that Officer Gibbas made assumptions based on prior DUI vehicle stops and failed to articulate facts establishing reasonable suspicion. *Id.* at 13. Thus, it is Appellant's position that the trial court erred by not granting Appellant's motion to suppress any and all evidence used against him at trial. *Id.*

"When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate." *Commonwealth v. Foglia*, 979 A.2d 357, 360 (Pa. Super. 2009) (*en banc*). "Where the Commonwealth prevailed on the suppression motion, we consider only the evidence of the prosecution and so much of the defense that remains uncontradicted." *Commonwealth v. Cooper*, 994 A.2d 589, 591 (Pa. Super. 2010).

> With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented.

*Commonwealth v. Swartz*, 787 A.2d 1021, 1023 (Pa. Super. 2001) (*en banc*). To the extent that the suppression court's factual findings are supported by the record, "we are bound by those facts and will only reverse if the legal conclusions are in error." *Cooper*, 994 A.2d at 591. As an

- 4 -

appellate court, it is our duty "to determine if the suppression court properly applied the law to the facts." ***Commonwealth v. Maldonado***, 14 A.3d 907, 910 (Pa. Super. 2011). Moreover, we note that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. ***In re L.J.***, 79 A.3d 1073, 1086-1087 (Pa. 2013).[3]

> Regarding vehicle stops, the Motor Vehicle Code provides as follows:
>
> **Authority of police officer.**--Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

> "The threshold justification for a vehicle stop is reasonable suspicion."

***Commonwealth v. Hendricks***, 927 A.2d 289, 290 (Pa. Super. 2007). The

---

[3] In ***L.J.***, our Supreme Court held that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. ***L.J.***, 79 A.3d at 1087. Prior to ***L.J.***, this Court routinely held that, when reviewing a suppression court's ruling, our scope of review included "the evidence presented both at the suppression hearing and at trial." ***Commonwealth v. Charleston***, 16 A.3d 505, 516 (Pa. Super. 2011) (quoting ***Commonwealth v. Chacko***, 459 A.2d 311 (Pa. 1983)). ***L.J.*** thus narrowed our scope of review of suppression court rulings to the evidence presented at the suppression hearing. In this case, Appellant's suppression hearing was held after ***L.J.*** was decided. Therefore, the procedural rule announced in ***L.J.*** applies to the case at bar.

police may stop a motorist on reasonable suspicion of DUI. 75 Pa.C.S. § 6308(b); **Commonwealth v. Chase**, 960 A.2d 108, 116 (Pa. 2008) ("Extensive case law supports the conclusion [that] a vehicle stop for DUI may be based on reasonable suspicion, as a post-stop investigation is normally feasible."); **Commonwealth v. Sands**, 887 A.2d 261, 270 (Pa. Super. 2005) ("[A] suspected violation for DUI is in fact a scenario where further investigation almost invariably leads to the most incriminating type of evidence . . . This type of evidence can only be obtained by a stop and investigation"). "In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, [a court] must give due weight . . . to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." **Commonwealth v. Hilliar**, 943 A.2d 984, 990 (Pa. Super. 2008). "[T]he totality of the circumstances test does not limit [an] inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." **Id.** Further, our Supreme Court has stated, "[W]hen the existence of reasonable suspicion combines with the expectation that the stop will allow light to be shed on the relevant matters, the stop is not unconstitutional." **Chase**, 960 A.2d at 115.

This Court has ruled that erratic driving alone can impart a reasonable suspicion of DUI. *See Commonwealth v. Hughes*, 908 A.2d 924, 926 (Pa. Super. 2006) (reasonable suspicion to stop vehicle for DUI existed where, in early morning hours, police observed vehicle swerving between left and right lanes); *Sands*, 887 A.2d at 270 (reasonable suspicion to stop vehicle for DUI existed where, in the early morning hours, police observed vehicle drift across a roadway fog line and then slowly drift back into lane).

The provisions of the DUI statutes with which Appellant was charged and convicted provide as follows:

> **§ 3802. Driving under influence of alcohol or controlled substance**
>
> **(a) General impairment.—**
>
> > (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.
>
> > \* \* \*
>
> **(b) High rate of alcohol.**--An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.
>
> > \* \* \*

**(d) Controlled substances.**--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

* * *

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S § 3802 (a)(1), (b), (d)(2).

In addressing Appellant's issue, the trial court provided the following analysis and conclusion:

In [the] instant case, Officer Gibbas testified to specific and articulable facts that taken together create a reasonable suspicion that [Appellant] was DUI. . . . [I]t [was] two o'clock in the morning on a Friday, the time when bars close. Officer Gibbas was conducting a selective enforcement at the intersection of Forty Foot Road and Sumneytown Pike for possible DUI drivers. The intersection is an area where Officer Gibbas, as an experienced officer, knows its history of DUI arrests. While monitoring the intersection, Officer Gibbas observed three vehicles stop behind each other at a red light. Vehicle 2's stop was so abrupt that Officer Gibbas thought Vehicle 2 was going to crash into [Appellant's] vehicle. Based on the second driver's abrupt stop, Officer Gibbas followed the three vehicles, whereby he witnessed [Appellant's] vehicle drift across the double yellow line as well as the fog line at least three times in one mile.

Based on the totality of circumstances in this case, [Appellant's] drifting heightened the implication that he could be DUI. . . . Officer Gibbas conducted a traffic stop of [Appellant's] vehicle for investigatory purposes. This Court concludes that Officer Gibbas possessed reasonable suspicion based on his experience with DUI arrests, his training with detecting DUI signs and his specific articulable observations that [Appellant] committed violations of the Motor Vehicle Code. Thus, the stop of [Appellant's] vehicle was lawful.

Trial Court Opinion, 2/10/15, at 7-8.

The trial court's summation of evidence is supported by the record. Officer Gibbas was patrolling in the early morning hours at an intersection known for its history of DUI arrests. N.T., 7/21/14, at 8-9. Officer Gibbas provided the following testimony regarding Appellant's erratic driving:

> [Officer Gibbas]: I was focused on – initially focused on the second vehicle that was in line. He is the one that made the abrupt stop. While watching that vehicle I also noticed that both that one and [Appellant's vehicle] in front of it were drifting over the double yellow line. I saw them drift over the line and then back into the respective lane and then also cross over the fog line before returning back to their lane of travel.
>
> [Counsel]: And how many times specifically did you see [Appellant's] vehicle drift?
>
> [Officer Gibbas]: I do not recall exactly, but between Forty Foot Road and Troxel Road I would say it was approximately three times just on my own personal – the way that I work I don't stop vehicles unless I see them, you know, cross lines at least three times.
>
> [Counsel]: And how far is that between these two areas?
>
> [Officer Gibbas]: Approximately one mile.

*Id.* at 10-11. Officer Gibbas clarified that the two vehicles in front of him did not drift in tandem, but drifted across the lines independently of one another. *Id.* at 16-17. Officer Gibbas had a clear view of the two drifting vehicles, including Appellant's, that were in front of him. *Id.* at 19.

Given the totality of circumstances, Officer Gibbas had reasonable suspicion that Appellant was driving under the influence. As a result, the

stop of Appellant's vehicle was lawful.  Accordingly, the trial court did not err in denying Appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/24/2015