**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BARRY E. RANKIN, | |
| Appellant | No. 2765 EDA 2014 |

Appeal from the Judgment of Sentence September 8, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014425-2013

BEFORE: BENDER, P.J.E., SHOGAN, and JENKINS, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 07, 2015**

Appellant, Barry E. Rankin, appeals from the judgment of sentence entered following his convictions of fleeing and driving under the influence. We affirm.

The trial court summarized the factual history of this case as follows:

> On September 23, 2013, at approximately 1:28 in the morning, Pennsylvania State Trooper Brendan Connor was on duty patrolling Interstate 95, near the Allegheny Avenue exit, in the city and county of Philadelphia, when he observed a motorcycle being operated by Appellant on the highway without rear lights. He attempted to close the gap between his patrol car and the motorcycle, and was initially unsuccessful, even after accelerating to speeds exceeding one hundred and ten miles per hour. Trooper Connor was able to get close enough to observe that the motorcycle had a driver, a passenger, and no registration tag. Trooper Connor observed Appellant's motorcycle traveling at high speeds, making multiple lane changes without signaling, and passing other vehicles in an unsafe manner. Trooper Connor activated his lights and sirens and Appellant continued to accelerate on the highway. Trooper Connor's vehicle was between five yards and twenty yards

behind the Appellant at various points of the pursuit while his lights and sirens were activated.

[Appellant] exited Interstate 95 at the Academy Road exit. After momentarily slowing down at a split in the road, Appellant accelerated again toward Academy Road. Trooper Connor observed the passenger look back towards him multiple times during the pursuit. Eventually, Appellant slowed his motorcycle and Trooper Connor accelerated past and "boxed the motorcycle in" prior to the intersection of Frankford Avenue and Academy Road. Appellant and his male passenger put up their hands and were taken into custody. Trooper Connor estimated that Appellant drove for approximately one mile or less after he activated his lights and sirens to initiate a traffic stop.

Trooper Connor observed that Appellant had extremely watery, red, glassy, blood shot eyes. He asked the Appellant for his driver's license, and Appellant replied that it was in his wallet in his pocket. Trooper Connor retrieved the wallet with Appellant's permission. While retrieving his license, Trooper Connor observed a small clear baggy containing a green leafy substance, alleged marijuana. Trooper Connor inquired whether Appellant's eyes were red, watery, and glassy because Appellant had been using marijuana. Appellant admitted that he had used marijuana earlier in the day.

Appellant was arrested and transported to the Philadelphia Police headquarters. Trooper Connor read him his O'Connell Warnings and Appellant agreed to a blood draw. The blood samples were marked with the case number K011942027, and Trooper Connor transported them to an evidence locker. An evidence custodian eventually transported the blood to DrugScan for analysis.

Dr. Richard Cohn, forensic toxicologist and pharmacologist for DrugScan, a federally certified laboratory, testified that the blood associated with case number K011942027 was analyzed at his direction. Dr. Cohn's analysis of the data generated was that 5 nanograms of Delta 9 THC, marijuana constituent per milliliter and greater than 50 nanograms of Delta 9 Carboxy THC, or marijuana metabolite per milliliter was present in Appellant's blood. Dr. Cohn opined that the person whose blood was analyzed had used marijuana not more than three or four hours prior to the blood draw and that the marijuana impaired his

- 2 -

ability to judge and perceive his surroundings, make safety sensitive decisions, and adversely impacted his cognitive faculties and motor skills to the extent it rendered him unfit to safely operate a motor vehicle on the highway.

Trial Court Opinion, 3/12/15, at 2-4 (internal citations omitted).

As a result of this incident, Appellant was charged with fleeing or attempting to elude police when given a visual or audible signal to stop, driving under the influence ("DUI") of a controlled substance, reckless endangerment, and possession of marijuana. Appellant filed a pretrial motion to suppress his statement admitting to previous marijuana use and his blood sample results. The trial court granted the motion as to the statement but denied suppression of the blood sample results. Following a bench trial, Appellant was convicted of fleeing, as a felony of the third degree, and driving under the influence. Appellant was acquitted of reckless endangerment and possession of marijuana. Appellant was sentenced to the mandatory minimum sentence of seventy-two hours to six months of incarceration for the DUI, first offense conviction, and a consecutive six months of probation for the fleeing conviction. Appellant filed a timely notice of appeal. Both the trial court and Appellant complied with the requirements of Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Because the drawing and testing of [A]ppellant's blood occurred in violation of the Implied Consent law and the probable cause requirements of the federal and state constitutions, was not the denial of [A]ppellant's suppression motion an error of law?

2. Was not the evidence of fleeing or attempting to elude police insufficient where the unrefuted trial evidence proved [A]ppellant stopped his motorcycle as soon as he could do so safely after he saw the patrol car's lights and any contrary testimony from the suppression hearing was never incorporated into the trial record?

Appellant's Brief at 4.

When an appellant raises both a sufficiency-of-the-evidence issue and a suppression issue, we address the sufficiency of the evidence supporting the conviction first, and we do so without a diminished record:

[W]e are called upon to consider all of the testimony that was presented to the jury during the trial, *without consideration as to the admissibility of that evidence*. The question of sufficiency is not assessed upon a diminished record. Where improperly admitted evidence has been allowed to be considered by the jury, its subsequent deletion does not justify a finding of insufficient evidence. The remedy in such a case is the grant of a new trial.

***Commonwealth v. Sanford***, 863 A.2d 428, 431–432 (Pa. 2004) (emphasis in original). Thus, we begin by addressing the sufficiency of the evidence, as "[t]he Double Jeopardy Clause bars retrial after a defendant's conviction has been overturned because of insufficient evidence." ***Commonwealth v. Mullins***, 918 A.2d 82, 85 (Pa. 2007) (citations omitted).

Appellant asserts that there was insufficient evidence to establish that Appellant fled from police. Appellant's Brief at 20. Appellant contends that the only evidence presented at trial regarding how Appellant came to a stop was from Appellant's passenger, who testified that once Appellant became aware of the police car's lights, he pulled over as soon as it was safely possible to do so. ***Id.*** Appellant maintains that there was no contrary

evidence because the Commonwealth failed to move for admission of the suppression hearing testimony into the trial record. *Id.* at 21. As a result, Appellant argues that the evidence cannot sustain his conviction for fleeing or eluding the police. *Id.*

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Rivera*, 983 A.2d 1211, 1220 (Pa. 2009). "It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence." *Commonwealth v. Jackson*, 955 A.2d 441, 444 (Pa. Super. 2008). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Kelly*, 78 A.3d 1136, 1139 (Pa. Super. 2013).

The offense of fleeing a police officer is defined as follows:

**§ 3733. Fleeing or attempting to elude police officer**

**(a) Offense defined. --** Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2).

75 Pa.C.S. § 3733(a).

We first address Appellant's claim that there was no evidence contrary to the motorcycle passenger's testimony because the Commonwealth failed to move for admission of the suppression hearing testimony, which included Trooper Brendan Connor's testimony, at trial. Trooper Connor testified during the suppression hearing immediately prior to the bench trial in this case regarding Appellant's actions. Appellant maintains that because the suppression motion testimony was not incorporated, the only evidence this Court may review for sufficiency purposes is the trial evidence. Appellant's Brief at 21.

We find this argument lacks merit on several grounds. First, Appellant did not raise this issue before the trial court, either by objecting to reference to the suppression hearing testimony during trial,[1] or by specifically raising this claim in his Pa.R.A.P. 1925(b) statement. **See Hansley**, 24 A.3d at 415 (explaining that appellant's Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal, or the court may find waiver). As a result, this issue is waived.

_____

[1] We note that both parties and the trial court referenced the testimony provided at the suppression hearing during the trial portion of this proceeding.

Additionally, even if Appellant had properly preserved this claim, we cannot agree that the trial court was prohibited from considering the testimony provided in the context of evidence on Appellant's motion to suppress. A review of the transcript reveals that the suppression hearing merged seamlessly into the trial. The transcript itself reflects one proceeding. The testimony related to the suppression hearing ended with the trial judge's decision to suppress Appellant's statement only. N.T., 9/8/14, at 32-33. The court further stated that there was probable cause to obtain the blood test results and there was, therefore, enough evidence to proceed to trial. *Id.* at 32-33. With that pronouncement, the Commonwealth called to the witness stand, expert witness Dr. Richard Cohn, to testify regarding the blood test results. *Id.* at 33. The trial continued with the parties calling the remaining witnesses. *Id.* at 52-83.

In this case the suppression hearing and the trial proceeded before the same judge. There was no jury to empanel or any other break in the proceedings. Additionally, given the fact that it was a bench trial, the trial judge could have taken judicial notice of the suppression proceedings. See Pa.R.E. 201(b) (a court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Commonwealth v. Brown*, 839 A.2d 433, 435 (Pa. Super.

2003). Thus, while we acknowledge Appellant's objection that the suppression testimony was not formally incorporated into the trial, we cannot agree that in this case the testimony from the suppression hearing should be excluded from the trial court's consideration. "To hold otherwise would elevate form over substance, something this Court has repeatedly refused to do." *Commonwealth v. Bricker*, 581 A.2d 147, 160 (Pa. 1990).

The trial court provided the following analysis in support of its conclusion that Appellant was guilty of fleeing an officer:

> Trooper Connor observed Appellant operating a motorcycle at extremely high speeds, without a rear light, and without an appropriate registration tag. Trooper Connor engaged his lights and sirens, and pursued Appellant with the vehicles in close proximity, such that the flashing lights of Trooper Connor's vehicle would have been apparent to Appellant. Appellant did not stop immediately, but continued for nearly one mile before finally being boxed in by Trooper Connor. The evidence was sufficient to prove that Appellant willfully failed to bring his vehicle to a stop, but instead continued for nearly one mile. Therefore, Appellant was properly convicted of fleeing. Because the offense was committed concurrently with a violation of [75 Pa.C.S.] section 3802, the offense was properly graded as a felony of the third degree.

Trial Court Opinion, 3/12/15, at 7.

The trial court's conclusion is supported by the evidence of record. Viewing all evidence in the light most favorable to the Commonwealth, we agree there was sufficient evidence to convict Appellant of fleeing from a police officer. The trial court found the testimony of Trooper Connor credible. As an appellate court, we may not re-weigh the evidence and

substitute our judgment for that of the fact-finder. *Kelly*, 78 A.3d at 1139. Appellant's first claim fails.

Next, Appellant argues that the state trooper did not have probable cause to believe that Appellant was driving under the influence of alcohol or a controlled substance and therefore, did not lawfully obtain Appellant's blood test results. Appellant's Brief at 18. *Id.* Appellant contends that the only indicia of intoxication was Appellant's bloodshot, glassy eyes, which Appellant asserts is consistent with driving a motorcycle at high rates of speed. *Id.* Appellant also argues that his possession of marijuana and admission to having smoked marijuana earlier in the day were not sufficient to establish probable cause that Appellant was under the influence. *Id.* at 19. Accordingly, Appellant maintains, the trooper did not have probable cause to test Appellant for intoxication. *Id.* at 20. Appellant asserts that his blood test results therefore were unlawfully obtained and should have been suppressed. *Id.* Appellant argues that he is entitled to a new trial without admission of the unlawfully seized evidence. *Id.* at 13.

"When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate." *Commonwealth v. Foglia*, 979 A.2d 357, 360 (Pa. Super. 2009) (*en banc*). "Where the Commonwealth prevailed on the suppression motion, we

consider only the evidence of the prosecution and so much of the defense that remains uncontradicted." ***Commonwealth v. Cooper***, 994 A.2d 589, 591 (Pa. Super. 2010).

> With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented.

***Commonwealth v. Swartz***, 787 A.2d 1021, 1023 (Pa. Super. 2001) (*en banc*). To the extent that the suppression court's factual findings are supported by the record, "we are bound by those facts and will only reverse if the legal conclusions are in error." ***Cooper***, 994 A.2d at 591. As an appellate court, it is our duty "to determine if the suppression court properly applied the law to the facts." ***Commonwealth v. Maldonado***, 14 A.3d 907, 910 (Pa. Super. 2011) (citation omitted).

Section 1547 of the vehicle code provides, in relevant part, as follows:

**§ 1547. Chemical testing to determine amount of alcohol or controlled substance**

**(a) General rule.--**Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

> (1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2)

- 10 -

> (relating to illegally operating a motor vehicle not
> equipped with ignition interlock); . . .

75 Pa.C.S. § 1547.[2]

The administration of a blood test is a search within the meaning of Article I, section 8 of the Pennsylvania Constitution if performed by an agent of, or at the direction of the government. ***Commonwealth v. Kohl***, 615 A.2d 308, 315 (Pa. 1992). "Generally, a search or seizure is unreasonable unless conducted pursuant to a valid search warrant upon a showing of probable cause. The 'implied consent' provision of the Motor Vehicle Code, however, dispenses with the need to obtain a warrant." ***Commonwealth v. Miller***, 996 A.2d 508, 512 (Pa. Super. 2010).

> [T]o administer a blood test under § 1547(a)(1), a police officer need only have reasonable grounds to believe that a person was driving under the influence of alcohol [or controlled substances]. Reasonable grounds has been interpreted to mean probable cause; thus, the police officer must have knowledge of sufficient facts and circumstances, gained through trustworthy information, to warrant a prudent man in the belief that a crime has been committed.

***Commonwealth v. Jones***, 121 A.3d 524, 528 (Pa. Super. 2015) (internal citations and quotation marks omitted).

In addressing this claim, the trial court provided the following analysis:

---

[2] While our Supreme Court declared subsection (a)(2) unconstitutional, ***Commonwealth v. Kohl***, 615 A.2d 308 (Pa. 1992), this Court subsequently reaffirmed the viability of the remaining provisions under subsection (a)(1). ***Commonwealth v. Urbanski***, 627 A.2d 789, 792 (Pa. Super. 1993). Herein, Appellant's arguments implicate subsection (1) only.

Here, Trooper Connor observed Appellant operating a motorcycle at extremely high speeds, without a rear light, and without an appropriate registration tag. Appellant failed to yield to Trooper Connor's lights and sirens and pull over until the trooper actually cut him off, preventing further egress. Therefore, Appellant was subject to a lawful arrest for fleeing or attempting to elude police. Appellant gave Trooper Connor consent to open his wallet, and therefore, the packet of alleged marijuana found within was subject to seizure under the plain view doctrine.

The court excluded from its analysis Appellant's statement. Under the totality of the circumstances, Appellant's reckless speeding, Appellant's failure to yield to Trooper Connor's signal, Appellant's watery, bloodshot, glassy eyes, coupled with his contemporaneous possession of a controlled substance were sufficient for Trooper Connor to form a reasonable belief that Appellant was driving under the influence of a controlled substance. Therefore, Appellant's motion to suppress blood evidence was correctly denied.

Trial Court Opinion, 3/12/15, at 5.

The trial court's summation of the evidence is supported by the evidence of record. We agree with the trial court's conclusion that Trooper Connor had probable cause to believe that Appellant was driving under the influence. We further note the distinction in cases involving alcohol-based DUI's and marijuana-based DUI's:

[T]he Vehicle Code treats consumption of alcohol differently from consumption of marijuana. The Vehicle Code does not preclude an adult from consuming any amount of alcohol and then operating a motor vehicle in Pennsylvania. *See* 75 Pa.C.S. § 3802(a). Instead, the Vehicle Code precludes the operation of a motor vehicle only "after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(a)(1). On the other hand, the Vehicle Code precludes an individual from operating a motor vehicle with any amount of scheduled controlled substance, or a

metabolite thereof, in the driver's blood. 75 Pa.C.S. § 3802(d). Because marijuana is a Schedule I controlled substance, the Vehicle Code prohibits an individual from operating a vehicle after consuming any amount of marijuana. As a result, unlike cases where police suspect alcohol-based DUI, evidence of operator consumption of any marijuana is enough to allow police to request a section 1547 blood test for suspected controlled substance-based DUI.

*Jones*, 121 A.3d at 529. Thus, Appellant's blood evidence was properly obtained, and the trial court correctly declined to suppress this evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/7/2015