**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Appellee.**

Supreme Court of Pennsylvania.

May 17, 2010.

## *ORDER*

PER CURIAM.

**AND NOW,** this 17th day of May 2010, the Motion to Dismiss for Mootness is **GRANTED.**

**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Robert COOPER, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 2, 2009.

Filed April 19, 2010.

Mark Cichowicz, Public Defender, Philadelphia, for appellant.

Karen B. Jordan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: DONOHUE, ALLEN, and FITZGERALD *, JJ.

OPINION BY FITZGERALD, J.:

¶ 1 Appellant, Robert Cooper, files this appeal from the order entered in the Philadelphia County Court of Common Pleas, denying his petition for writ of *certiorari* following his non-jury conviction of possession of a controlled substance (marijuana).[1] On appeal, Appellant challenges the denial of his motion to suppress the evidence. We hold that a police officer may not conduct a pat-down search, *i.e.* a *Terry* frisk,[2] of a person who reaches toward his pocket upon the officer's approach when that person obeys the officer's directive to stop before actually reaching into his pocket, and the officer does not articulate any reason to believe the person possessed a weapon. Accordingly, we reverse.

¶ 2 At 9:00 a.m. on April 19, 2008, police officers patrolled a neighborhood where they received complaints of people stealing copper from street dumpsters. That night, they observed Appellant next to a dumpster, although they were unable to

---

* Former Justice specially assigned to the Superior Court.

1. 35 P.S. § 780–113(a)(31)(i).

2. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

discern what Appellant was doing. An officer exited the police vehicle and approached Appellant. The officer testified that Appellant, at that point, "belated his body backwards towards his left side and reached for his pocket." N.T., 10/6/08, at 7. The officer instructed Appellant to stop and conducted a pat-down search, later testifying that he thought Appellant was about to draw a weapon. During the pat-down, the officer felt pill-like objects which he thought were narcotics. The officer recovered eight zip-lock packets containing a substance later identified as marijuana.

¶ 3 Appellant filed a motion to suppress the marijuana, contending both that the police lacked reasonable suspicion to stop and detain Appellant, and that the police did not have reasonable suspicion to conduct the pat-down search. The municipal court denied Appellant's motion, then convicted Appellant of possessing a small amount of marijuana. The court ordered Appellant to pay the cost of laboratory fees, but imposed no further penalty. Appellant subsequently filed a petition for writ of *certiorari* with the Court of Common Pleas, which denied the petition. This appeal followed. Appellant timely complied with the trial court's Pa.R.A.P. 1925(b) order, and the trial court filed a responsive opinion.

¶ 4 Appellant raises the following issue for our review:

> Did not the [trial] court err in failing to grant the writ of *certiorari* to the Philadelphia Municipal Court because [Appellant] was stopped and detained by the police without reasonable suspicion or probable cause, and because the police did not possess reasonable suspicion that [Appellant] was armed and dangerous to justify the frisk of [Appellant]?

Appellant's Brief at 3.

> Our standard of review in addressing a challenge to a trial court's suppression

ruling is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. Where the Commonwealth prevailed on the suppression motion, we consider only the evidence of the prosecution and so much of the defense that remains uncontradicted. When the record supports the trial court's denial of the suppression motion, we are bound by those facts and will only reverse if the legal conclusions are in error.

*Commonwealth v. McDonald,* 881 A.2d 858, 860 (Pa.Super.2005) (citation omitted).

¶ 5 Appellant's issue actually consists of two claims. First, he argues that the police did not have reasonable suspicion or probable cause to stop and detain him. Within this claim, he contends that the officer's actions prior to the frisk constituted an investigative detention, requiring the officer to have at least reasonable suspicion of criminal activity. Appellant avers that upon approaching him, the officer knew only that people generally were stealing copper from dumpsters in that area and Appellant was found next to a dumpster, which was not sufficient to constitute reasonable suspicion. Appellant concludes that the officer's initial approach toward Appellant was improper. We disagree.

¶ 6 Our courts recognize three levels of intrusion between police and citizens:

> The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond. The second category, an investigative detention, derives from *Terry v. Ohio* and its progeny: such a detention is lawful if supported by reasonable suspicion because,

although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The final category, the arrest or custodial detention, must be supported by probable cause.

Commonwealth v. Moyer, 954 A.2d 659, 663 (Pa.Super.2008) (*en banc*) (quoting Commonwealth v. Smith, 575 Pa. 203, 212–13, 836 A.2d 5, 10 (2003)) (alteration in Moyer), appeal denied, 600 Pa. 754, 966 A.2d 571 (2009).

> In determining whether an interaction should be considered a mere encounter or an investigative detention, the focus of our inquiry is on whether a "seizure" of the person has occurred. Commonwealth v. Mendenhall, [ ] 552 Pa. 484, 715 A.2d 1117, 1120 (1998). Within this context, our courts employ the following objective standard to discern whether a person has been seized: "[W]hether, under all the circumstances surrounding the incident at issue, a reasonable person would believe he was free to leave." Commonwealth v. Smith, 732 A.2d 1226, 1232 (Pa.Super.1999) ... Thus, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." United States v. Kim, 27 F.3d 947, 950 (3d Cir.1994).

Commonwealth v. Mulholland, 794 A.2d 398, 401 (Pa.Super.2002) (quoting Commonwealth v. McClease, 750 A.2d 320, 324 (Pa.Super.2000)) (brackets in Mulholland omitted).

¶ 7 Instantly, we cannot conclude that the police's actions, upon approaching Appellant, rose to the level of an investigative detention. Appellant, in fact, fails to identify any particular action by the officer to indicate that Appellant was subject to an investigative detention, rather than a mere encounter, before the frisk. The evidence presented at the suppression motion suggests only that the officer exited his vehicle and approached Appellant with the intention of asking him questions. There was no evidence presented that the officer drew his weapon or commanded Appellant to remain in place before Appellant made his movements. Accordingly, we conclude that the officer subjected Appellant to only a mere encounter prior to frisking him. *See Mulholland, supra.*

¶ 8 We therefore turn to Appellant's claim that the officer's frisk of him was improper. He argues that the officer had no reason to believe that Appellant was armed and dangerous. He contends that even if he made a movement toward a pocket, he complied immediately when the officer told him to stop. Appellant insists that the officer could have suspected him only of trash-theft, and that his actions could not have led the officer to believe that a frisk was warranted. He concludes that the trial court erred in denying his petition for writ of *certiorari.* We agree.

¶ 9 In considering the evidence purported to support a *Terry* frisk, we are "guided by common sense concerns, giving preference to the safety of the officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon." Commonwealth v. Mack, 953 A.2d 587, 590 (Pa.Super.2008).

> A police officer may conduct a quick frisk for weapons if he or she reasonably fears that the person with whom he or she is dealing may be armed and dangerous. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger. The existence of reasonable

suspicion to frisk an individual must be judged in light of the totality of the circumstances confronting the police officer.

*Commonwealth v. Taylor,* 565 Pa. 140, 152–53, 771 A.2d 1261, 1268–69 (2001) (citations and quotation marks omitted). "To justify a frisk incident to an investigatory stop, the police need to point to **specific and articulable** facts indicating the person they intend to frisk may be armed and dangerous; otherwise, the talismanic use of the phrase 'for our own protection,' a phrase invoked by the officers in this case, becomes meaningless." *Commonwealth v. Myers,* 728 A.2d 960, 963 (Pa.Super.1999) (quoting *Commonwealth v. Patterson,* 405 Pa.Super. 17, 591 A.2d 1075, 1078 (1991)) (emphasis added in *Myers* ).

¶ 10 In *Commonwealth v. Parker,* 957 A.2d 311 (Pa.Super.2008), *appeal denied,* 600 Pa. 755, 966 A.2d 571 (2009), a panel of this Court affirmed the denial of the suppression motion when the officer testified that he worried about possible weapons after conducting a traffic stop of the appellant's vehicle because the appellant's "shoulders [were] dipping from side to side as if he was trying to retrieve something." *Id.* at 316. The appellant was also unable to produce identification. *Id.* at 313. In support of its decision, the *Parker* Court relied on *Commonwealth v. Wilson,* 927 A.2d 279 (Pa.Super.2007), in which officers also performed a traffic stop, then observed the appellant, who was "nervous and fidgety ... constantly looking into his rear view and side mirrors and his 'shoulders and stuff' were moving around." *Id.* at 284. The *Parker* Court also cited this Court's decisions in *Mack, supra,* in which the officer cited the late hour, the defendant's nervousness, his lack of proper iden-

tification, and his reaching movements in the vehicle as justification for frisking the defendant,[3] and *Commonwealth v. Murray,* 936 A.2d 76 (Pa.Super.2007), in which the officer cited the late hour, the high-crime neighborhood, and the defendant's excessive movement inside the vehicle. *Murray,* 936 A.2d at 77.

¶ 11 The trial court relied on this Court's decision in *Commonwealth v. Carter,* 779 A.2d 591 (Pa.Super.2001), for the following proposition:

> Our conclusion would have been different if, without being prompted by [the officer], Appellee put his hand in his pocket. Under this scenario, [the officer] could have reasonably feared for his safety as Appellee could have been attempting to retrieve a weapon from his pocket. The officer's concern for his safety would also be justified given Appellee's reputation as a member of a violent gang. Consequently, the officer's response in reaching for his side arm and ordering Appellee to stop and show his hands would not have escalated the encounter into an investigative detention. In other words, if during a mere encounter, an individual, on his own accord, puts his hand in his pocket, thereby creating a potential danger to the safety of a police officer, the officer may justifiably reach for his side arm and order the individual to stop and take his hand out of his pocket. Such reaction by the police officer does not elevate the mere encounter into an investigative detention because the officer's reaction was necessitated by the individual's conduct.

*Id.* at 594; *see* Trial Ct. Op. at 6 (citing *Carter,* 779 A.2d at 594, 595). The trial court interpreted this passage to mean

---

3. The trial court in *Mack* granted the motion to suppress. The Commonwealth appealed, and this Court reversed.

that "[w]hen [Appellant] turned his body to his left side and put his hand in his pocket, this gave [the officer] reasonable suspicion that criminal activity may be afoot and would justify the stop of [Appellant] and the frisk of his person for weapons." Trial Ct. Op. at 6.

¶ 12 First, we cannot agree with the trial court's reliance on *Carter.* As Appellant correctly notes, the statement relied upon by the trial court was *dictum.* Moreover, even in *dictum,* the *Carter* Court did not *ipso facto* sanction the frisking of a defendant who puts his hand in his pocket. The Court merely stated that an officer would be justified in "reach[ing] for his side arm and order the individual to stop and take his hand out of his pocket." *Carter,* 779 A.2d at 594. While such actions may support an investigative detention and preventative measures by officers, the trial court erred in finding that the *Carter* Court approved of *Terry* frisks in such situations.[4]

¶ 13 In the instant case, we also observe that the officer cited considerably less compelling reasons to fear for his safety than the officers in *Parker, Wilson,* and *Mack,* and *Murray.* The instant incident occurred at 9:00 a.m., whereas the incidents in *Parker, Mack,* and *Murray* occurred late at night.[5] There was no testimony establishing that Appellant was found in a dangerous neighborhood; indeed, the officer testified only that trash theft was a regular occurrence there. Importantly, the police did not approach Appellant while he was in a car, where they might have more reason to suspect that the driver may have retrieved a weapon; instead, the police simply found Appellant next to a dumpster, where he was in no position to retrieve a weapon before police could question him. Finally, while the above-cited cases refer to the defendants' nervous or excessive movements, Appellant merely moved toward his pocket and ceased immediately upon the officer's directive.

¶ 14 Based on this sparse record, we are unable to conclude that Appellant's mere movement toward his pocket in broad daylight gave the officer reason to believe Appellant was armed and dangerous, particularly in light of Appellant's compliance with the officer's directive for him to stop the movement. The officer cited no other reason to believe that Appellant, even if he was suspected of stealing trash or copper, was reaching for a weapon. Importantly, the testimony did not reveal that Appellant actually reached into his pocket, nor did it reveal that the officer saw anything resembling a weapon on Appellant's person.

¶ 15 We therefore echo this Court's statement in *Commonwealth v. Preacher,* 827 A.2d 1235 (Pa.Super.2003):

> We reiterate our concern for the protection of police officers in the performance of their duties. However, [the officer] did not articulate any specific reasons that would suggest Appellant was armed and dangerous, stating only in general terms that he frisked Appellant for his safety and the safety of other officers and Appellant. Under the current state of the law in this Commonwealth, such a general statement does not provide a sufficient basis for conducting a frisk incident to an investigatory stop.

*Id.* at 1240. Because the officer's statement sounded more in general statements of safety concerns than specific and articu-

---

4. Instantly, Appellant did not even reach into his pocket. Rather, the officer suspected that Appellant was about to reach into his pocket. Thus, there are even less compelling reasons to suspect Appellant was dangerous than in the hypothetical posed by the *Carter* Court.

5. Police pulled Parker over at 11:47 p.m.

lable reasons justifying a frisk, we conclude that the trial court should have granted Appellant's petition for writ of *certiorari*. *See id.* Accordingly, we reverse the order denying Appellant's petition and remand for further proceedings.

¶ 16 Order reversed. Case remanded. Jurisdiction relinquished.