J-S81010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DARREA LAWRENCE | |
| Appellee | No. 604 EDA 2016 |

Appeal from the Order February 1, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007113-2015

BEFORE: BOWES AND MOULTON, JJ., AND STEVENS, P.J.E.*

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 16, 2016**

The Commonwealth appeals from the February 1, 2016 order granting Darrea Lawrence's motion to suppress. We reverse.

The following facts were adduced by the Commonwealth. On May 30, 2015, at approximately 8:50 p.m., Philadelphia police officer Edward Oleyn responded to a burglary. When he arrived, another patrol unit was present, and that officer was speaking to the victim in front of her residence. As the burglary victim spoke with the other officer, Appellee came into view further up the street walking toward the scene of the incident. The burglary victim observed Appellee approaching her position, pointed him out to police, and stated that Appellee was violating the terms of a protection from abuse ("PFA") order by nearing her residence.

* Former Justice specially assigned to the Superior Court.

Upon hearing that Appellee was in violation of a PFA, Officer Oleyn and his partner advanced toward him. When Appellee observed the officers proceeding in his direction, he abruptly stopped and retreated down the street. Officer Oleyn directed Appellee to stop, but he did not immediately do so. As he withdrew, Appellee repeatedly reached for his right-hand pants pocket. The officer then apprehended Appellee and immediately conducted a pat-down search. Officer Oleyn recovered a silver handgun from Appellee's pocket, and placed him under arrest.[1]

Based on the foregoing, the Commonwealth charged Appellee with firearms not to be carried without a license and carrying firearms on public streets or public property in Philadelphia. Appellee filed a pre-trial motion to suppress the evidence against him. A suppression hearing was held on February 1, 2016, and after hearing Officer Oleyn's testimony, the trial court granted Appellee's motion. This timely appeal followed. The Commonwealth complied with the trial court's directive to file a Rule 1925(b) concise statement of errors complained of on appeal, and the trial court authored its Rule 1925(a) opinion. This matter is now ready for our review.

The Commonwealth presents one question for our consideration: "Did the lower court err in suppressing [Appellee's] handgun on the basis the

---

[1] Subsequent to his arrest, Officer Oleyn discovered there was no protection from abuse order in place against Appellee.

police lacked reasonable suspicion to frisk [Appellee] where a reliable informant told the officers he was in violation of a protection from abuse order, he disregarded an officer's instruction to stop, and repeatedly reached into his pants pocket?" Commonwealth's brief at 3.

This Court reviews the grant of a suppression motion under well-established principles. We consider the evidence of the defendant, as the prevailing party below, and any evidence of the prosecution that is uncontradicted in the context of the suppression record. ***Commonwealth v. Walls***, 53 A.3d 889, 892 (Pa.Super. 2012) (citation omitted). We are bound by the factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error. ***Id***. We are not bound by the legal conclusions of the suppression court. ***Id***.

Initially, we observe that Appellee concedes his seizure by the police amounted to an investigatory stop, and that it was justified by reasonable suspicion. It is well established that a police officer may conduct a brief investigatory stop of an individual if the officer observes conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot. ***Terry v. Ohio***, 392 U.S. 1 (1968); ***Commonwealth v. Lewis***, 636 A.2d 619, 623 (Pa. 1994). The Commonwealth contends, on the other hand, that the immediate search of Appellee's person was supported by reasonable suspicion.

A law enforcement officer may pat down an individual whose suspicious behavior he is investigating on the reasonable belief that the individual is presently armed and dangerous. *Commonwealth v. Gray*, 896 A.2d 601, 605-606 (Pa. 2006) (citing *Terry*, *supra* at 24). A police officer may conduct such a so-called "*Terry* frisk" for weapons if

> he or she reasonably fears that the person with whom he or she is dealing may be armed and dangerous. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger. The existence of reasonable suspicion to frisk an individual must be judged in light of the totality of the circumstances confronting the police officer.

*Commonwealth v. Cooper*, 994 A.2d 589, 592-593 (Pa.Super. 2010) (citation omitted). In order to justify a *Terry* frisk, "the police need to point to specific and articulable facts indicating the person they intend to frisk may be armed and dangerous; otherwise, the talismanic use of the phrase 'for our own protection,' a phrase invoked by the officers in this case, becomes meaningless." *Id*. at 593 (citation omitted).

The Commonwealth alleges that the trial court's determination that the police lacked reasonable suspicion to frisk Appellee ignored the totality of the circumstances. In support of this position, the Commonwealth highlights that the burglary victim was known to police, and her statement that Appellee was allegedly in violation of a PFA was therefore reliable. It asserts that a PFA implied Appellee had a history of violent behavior. Finally, the

Commonwealth maintains that Appellee's evasive conduct coupled with his repeated placement of his hand in his pants pocket supplied reasonable suspicion for the *Terry* frisk.

In finding that the pat-down of Appellee's person was not supported by reasonable suspicion, the trial court determined the police did not have specific and articulable facts to reasonably believe Appellee was armed and presently dangerous. The court notes that Appellee was not connected to the burglary call that first brought law enforcement to the area. Immediately prior to the search, the police knew only that Appellee may have been in violation of a PFA, and that he began walking away when Officer Oleyn approached him. The court emphasized that there was no other information indicating Appellee possessed a weapon. Hence, it concluded that, in light of the totality of the circumstances, there was insufficient evidence for a reasonable police officer to objectively conclude that Appellee was armed and dangerous at the time Officer Oleyn apprehended, and simultaneously frisked, Appellee. We disagree.

As the trial court relied on *Cooper*, *supra*, to support its position, we begin our analysis there. In *Cooper*, police officers patrolling a neighborhood received complaints that somebody was stealing copper from dumpsters in the area. That evening, two officers observed Cooper near a dumpster. When they exited their patrol car, Cooper turned away from the officers and reached for his pocket. The officers ordered Cooper to stop and

conducted a pat-down search for the officers' safety. The officers discovered marijuana during the frisk, and after charges were filed, Cooper moved to suppress that evidence.

In finding that Cooper's movement toward his pocket in broad daylight did not provide the officers with sufficient reason to believe that he was armed and dangerous, we noted that "the officer cited no other reason to believe that [Cooper], even if he was suspected of stealing trash or copper, was reaching for a weapon." *Cooper*, *supra* at 594. The trial court relied on our decision in *Commonwealth v. Carter*, 779 A.2d 591 (Pa.Super. 2001), for the proposition that officers would be justified in patting down an individual who puts his hand in his pocket during an encounter. We cautioned that the *Carter* court "did not *ipso facto* sanction the frisking of a defendant who puts his hand in his pocket." *Cooper*, *supra* at 594.

Contrary to the trial court's holding, we find the dispute herein analogous to *Commonwealth v. Wilson*, 927 A.2d 279 (Pa.Super. 2007). In *Wilson*, an officer observed a vehicle failing to stop at a stop sign at approximately 7:43 p.m. After initiating a traffic stop, the officer observed that the defendant appeared nervous. The defendant was seen repeatedly checking his mirrors. In addition, he had placed his hand in his pockets. After conducting a pat-down search, the officer discovered crack cocaine in the defendant's pocket. On appeal, the defendant challenged the *Terry* frisk

asserting that the officer lacked reasonable suspicion that he was armed and dangerous.

In **Wilson**, this Court found that the officer had reasonable suspicion to perform a pat-down search of the defendant. The officer testified that the defendant appeared nervous and fidgety. During the course of the traffic stop, the officer noted that the defendant had placed his hands in his pocket, "like he was reaching around for something[.]" **Id**. at 284. This behavior raised the officer's suspicion since, in his experience, "people usually put their hands in their pocket to conceal a weapon, among other things." **Id**. Based on the defendant's apprehensive gestures and movements, and the placement of his hand in his pocket, we held that the officer could reasonably believe that his safety was in jeopardy. Hence, he was justified in performing a **Terry** frisk for his own safety.

Instantly, the Commonwealth adduced evidence that officers investigating an unrelated burglary were made aware by a known individual that Appellee was purportedly in violation of a PFA. Upon observing police approaching his position, Appellee abruptly turned, walked away from police, and repeatedly placed his hand in his pocket. While walking away, Appellee ignored commands by Officer Oleyn to stop. Upon observing Appellee's behavior, Officer Oleyn performed the **Terry** frisk "for officer safety." N.T. Suppression Hearing, 2/1/16, at 6.

The allegation, from a reliable source, that Appellee was in violation of a PFA indicated to Officer Oleyn that Appellee had a history of violent conduct. Therefore, it was reasonable for the officer to suspect, at the outset, that Appellee posed a threat to officer safety. Furthermore, as in **Wilson**, **supra**, Appellee's behavior evinced articulable signs that would lead an officer to reasonably believe he was armed and dangerous. Appellee attempted to evade police and ignored repeated orders to stop. While walking away from the police, Appellee continually placed his hand in his right pocket. Appellee's suspicious behavior supported the inference that he was concealing a weapon in that pocket, and therefore, based on the totality of the circumstances, Officer Oleyn was justified in subjecting him to a pat-down search.

Order reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2016