J-A32036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| EDWIN ROBIN ANDERSON, | |
| Appellant | No. 1329 EDA 2016 |

Appeal from the Judgment of Sentence March 28, 2016
in the Court of Common Pleas of Chester County
Criminal Division at No.: CP-15-CR-0000334-2015

BEFORE:  DUBOW, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:　　　　　　　**FILED FEBRUARY 07, 2017**

Appellant, Edwin Robin Anderson, appeals from the judgment of sentence[1] imposed following his bench conviction of one count each of persons not to possess firearms, and firearms not to be carried without a license.[2]　Appellant challenges the trial court's denial of his motion to suppress evidence.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We have amended the caption to reflect that, although Appellant purports to appeal from the order denying his suppression motion, the appeal properly lies from his judgment of sentence.  **See Commonwealth v. Pratt**, 930 A.2d 561, 562 n.1 (Pa. Super. 2007), *appeal denied*, 946 A.2d 686 (Pa. 2008).

[2] 18 Pa.C.S.A. §§ 6105(c)(2) and 6106(a)(1), respectively.

We take the relevant facts and procedural history of this case from our independent review of the certified record. In the early morning hours of January 22, 2015, Corporal Jonathan Shave of the Coatesville Police Department received a dispatch to the scene of a robbery. The suspects had fled, and the victim

> described them as being young black males in their teens or early twenties. The suspect that came in the house and took the wallet he described as light skinned, shorter and stocky. The other suspect he described as dark skinned and taller. . . .
>
> . . . [The victim] stated that one of the suspects implied that he had a gun and he did observe a dark handle in his pocket, but he could not tell if it was a gun or not. . . .

(N.T. Suppression, 9/23/15, at 13).

On January 23, 2015, at about 5:25 p.m., while off-duty, Cpl. Shave went to a Walgreens store located in a high crime area, approximately ten blocks away from where the robbery occurred. Cpl. Shave observed two men who generally matched the physical description of the robbery suspects walk into the store together, specifically, Mr. Ernay,[3] a "[l]ight-skinned black male, small in stature," and Appellant, who "was darker skinned than his light-skinned male companion and he was taller." (**Id.** at 10; **see id.** at 19). Cpl. Shave

> observed that [Mr. Ernay] was carrying a firearm. The firearm was on his right side. [Cpl. Shave] observed the firearm, the slide and the barrel to be tucked into his jeans

_____

[3] Mr. Ernay's first name is not apparent from the record.

- 2 -

pocket with the handle of the firearm sticking out. The weapon was not holstered in any way, shape or form.

(*Id.* at 7).

Cpl. Shave, who has had extensive training in the area of firearm safety, had never seen anyone carry a firearm in this dangerous manner. (*See id.* at 7-8, 11, 19). This "stood out completely [to him]" and he thought: "[t]hese are the two guys from that robbery because of that firearm, the way it was positioned in his pocket." (*Id.* at 19).

Cpl. Shave exited the store and notified shift supervisor Cpl. Jeffrey Ingemie that "[he] had observed [two] subjects [who] appeared to have matched the description of a robbery, specifically one with a firearm tucked in his pocket, and [he] asked [Cpl. Ingemie] to respond to assist." (*Id.* at 14; *see id.* at 27, 36, 45). Multiple officers responded to the Walgreens, including Cpls. Ingemie and Sean Dowds. Appellant remained in the store, and Mr. Ernay returned to his vehicle. Cpl. Ingemie investigated Mr. Ernay, and determined that he was legally carrying the firearm. While Cpl. Ingemie was investigating Mr. Ernay, he noticed that Appellant was pacing inside of the store near the cash registers and staring at the officers, without purchasing anything. Cpl. Ingemie directed Cpl. Dowds to speak to Appellant.

Cpl. Dowds entered the store accompanied by Police Officer Chris McCarthy, and they approached Appellant. Cpl. Dowds told Appellant that he would like to speak to him and requested identification. Appellant produced his license, and Officer McCarthy returned to his patrol vehicle to

- 3 -

run it. Cpl. Dowds asked Appellant to step outside of the store with him, Appellant assented, and the two men walked outside of the store towards the patrol vehicle. Cpl. Dowds asked Appellant if he could pat him down for safety, and Appellant did not respond. Cpl. Dowds proceeded to pat Appellant down, checking for weapons, "for [his] safety," and because "in [his] training and experience, where there's one gun, there possibly could be two guns." (*Id.* at 45; *see id.* at 43-46). The pat down revealed a loaded handgun in Appellant's waistband. Cpl. Dowds detained Appellant, and police determined that he is a prior convicted felon, and is ineligible to have a license to carry a firearm.

Prior to trial, Appellant filed a motion to suppress evidence, which the trial court denied on October 29, 2015, following a hearing. The trial court found Appellant guilty of the above-mentioned offenses after a stipulated facts trial on December 18, 2015. On March 28, 2016, the trial court sentenced Appellant to a term of not less than three and a half nor more than eight years' incarceration, followed by three years of probation. This timely appeal followed.[4]

Appellant raises the following issues for our review:

_____

[4] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal on May 17, 2016. The trial court issued an opinion on May 23, 2016, in which it adopted its opinion entered on October 29, 2015, for the reasons for its decision. *See* Pa.R.A.P. 1925.

A. Did the [t]rial [c]ourt commit legal error in finding that the Corporal Shawn Dowds had reasonable suspicion to stop and frisk the Appellant?

B. Did the [t]rial [c]ourt commit legal error in denying the Appellant's pre-trial motion to suppress the evidence obtained during this encounter?

(Appellant's Brief, at 2).[5]

On appeal, Appellant argues the trial court erred in finding that Cpl. Dowds was justified in conducting the investigatory detention because the officer lacked the requisite reasonable suspicion. (*See* Appellant's Brief, at 7-16). He contends that the court's focus should have been on Cpl. Dowds' knowledge at the time of the stop, and that the officer did not have reasonable suspicion that Appellant was involved in criminal activity. (*See id.* at 10). Cpl. Dowds had not personally observed Appellant's pacing or failure to purchase items in the store, he had no information as to whether Appellant was armed, and the only knowledge he had was that Appellant might have matched the general description of the robbery suspect. (*See id.* at 10-11, 15). Appellant further maintains that because Cpl. Dowds illegally detained and searched him, the court should have suppressed the firearm found during the pat-down. (*See id.* at 16). This issue does not merit relief.

_____

[5] Although framed as two separate issues, the claims Appellant raises on appeal are interrelated and challenge the trial court's denial of his motion to suppress evidence. We will therefore address the claims together.

Our standard of review in addressing a challenge to the denial of a suppression motion is

> limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

It is well-established that there are three categories of interaction between citizens and police officers. . . .

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

**Commonwealth v. Ranson**, 103 A.3d 73, 76–77 (Pa. Super. 2014), *appeal denied*, 117 A.3d 296 (Pa. 2015) (citations omitted).

- 6 -

Instantly, Cpl. Dowds' action in patting Appellant down for weapons was a **Terry**[6] frisk.

> A **Terry** frisk is a type of investigative detention requiring reasonable suspicion that criminal activity is afoot and that the individual whose suspicious behavior [an officer] is investigating at close range is armed and presently dangerous to the officer or to others. The purpose of a **Terry** frisk is not to discover evidence of a crime, but to protect the police officer conducting the investigation.
>
> The reasonable suspicion necessary to conduct a **Terry** frisk and, in fact, all investigative detentions
>
>> is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.
>
> The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. In assessing the totality of the circumstances, a court must give weight to the inferences that a police officer may draw through training and experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

---

[6] **Terry v. Ohio**, 392 U.S. 1 (1968).

***Commonwealth v. Davis***, 102 A.3d 996, 999–1000 (Pa. Super. 2014),

*appeal denied*, 113 A.3d 278 (Pa. 2015) (citations and quotation marks

omitted).

In addition,

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger. The existence of reasonable suspicion to frisk an individual must be judged in light of the totality of the circumstances confronting the police officer.

***Commonwealth v. Cooper***, 994 A.2d 589, 592–93 (Pa. Super. 2010),

*appeal denied*, 13 A.3d 474 (Pa. 2010) (citation omitted).

"A police officer need not personally observe unusual or suspicious

conduct reasonably leading to the conclusion that criminal activity is afoot

and that a person is armed and dangerous[,]" and may rely upon

information provided by other officers. ***Commonwealth v. Jackson***, 519

A.2d 427, 430 (Pa. Super. 1986) (citation omitted). "Moreover, whether the

defendant was located in a high crime area similarly supports the existence

of reasonable suspicion." ***Commonwealth v. Foglia***, 979 A.2d 357, 361

(Pa. Super. 2009) (*en banc*), *appeal denied*, 990 A.2d 727 (Pa. 2010)

(citation omitted).

Here, while at a drugstore located in a high crime area in close

proximity to where a robbery had occurred the day before, Cpl. Shave

observed two men who matched the general description of the robbery

suspects enter the store together. (***See*** N.T. Suppression, at 7, 9-10, 19).

Importantly, one of the men was carrying a firearm in the exact same dangerous and highly unusual manner as one of the robbery suspects. (*See id.* at 7-8, 13, 19). Because of his concern for safety, Cpl. Shave requested police assistance, and relayed to the other officers his observations. (*See id.* at 8, 13-14, 27, 36, 45). Upon police arrival at the drugstore, Appellant paced and stared at the officers, remaining in the store without purchasing anything, while police investigated his companion. (*See id.* at 29-31). Cpl. Dowds then engaged Appellant and conducted a pat-down search to determine whether he was carrying a weapon, "for [his] safety," and because "in his training and experience, where there's one gun, there possibly could be two guns." (*Id.* at 45; *see id.* at 43-44, 46).

Based on the foregoing, in light of the totality of the circumstances, and giving weight to the inferences Cpl. Dowds drew based on his training and experience, we conclude that the investigatory detention was supported by reasonable suspicion of criminal activity, and Cpl. Dowds' justifiable belief in the need to protect officer safety. *See Davis*, *supra* at 999–1000; *Cooper*, *supra* at 592–93. Thus, the trial court properly denied Appellant's motion to suppress evidence. *See Ranson*, *supra* at 76–77. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/7/2017