J-A13008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID N. CHAU | : | |
| | : | |
| Appellant | : | No. 1437 EDA 2017 |

Appeal from the Judgment of Sentence December 14, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009672-2014

BEFORE: SHOGAN, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.: **FILED NOVEMBER 14, 2019**

Appellant, David N. Chau, appeals from the judgment of sentence entered December 14, 2016, in the Court of Common Pleas of Philadelphia County. We conclude that under controlling precedent, the police lacked reasonable suspicion to detain Appellant. Accordingly, we reverse the trial court's order denying Appellant's motion to suppress, and we vacate the judgment of sentence.

The trial court summarized the factual and procedural history of this case as follows:

> [Appellant] was arrested and was charged with *inter alia*, Firearms not to be Carried Without a License[1], Carrying Firearms on Public Streets or Public Property in Philadelphia[2], and Person not to Possess or Control a Firearm[3] for events that occurred on August 10, 2014, at or near the 800 block of Granite Street in the City and County of Philadelphia.
>
> [1]18 Pa. [C.S.A.] § 6106

_____
* Retired Senior Judge assigned to the Superior Court.

[2]18 Pa. C.S.A. § 6108

[3]18 Pa. C.S.A. § 6105

A motion-to-suppress hearing was conducted before this [c]ourt on March 24, 2015. The following facts were proved at the hearing: Police Officer Ned Felici and his partner, Police Officer Holland (first name not given), were in full uniform, in a marked vehicle, in the area of Granite Street responding to a report of a person with a gun. The flash information they received was "an Asian male in a black and red jacket in possession of a firearm with a black male in a grey shirt on the 800 block of Granite Street." The officers proceeded to the location and pulled up mid-block (where Trotter Street breaks up Granite Street). Officer Felici observed [Appellant], who matched the exact description contained in the flash information. Officer Felici exited his vehicle and pulled his weapon; [Appellant], who had looked at Officer Felici exiting his vehicle, began to turn and walk eastbound on Granite Street. Fearing for his own safety as he could not see [Appellant's] right hand in his pocket, Officer Felici asked [Appellant] to show him his hands. As Officer Felici is telling [Appellant] to show his hands, [Appellant] steps off the curb between two parked cars and starts to raise his left hand. As he is doing this, Officer Felici hears a large metal object hit the ground and [Appellant] then raises his right hand. Officer Felici automatically believed it was a gun that was dropped and placed [Appellant] in handcuffs. Officer Felici looked in the area between the two cars, and where [Appellant's] right foot would have been, Officer Felici found a gun. [Appellant] was placed into custody. The entire encounter took place within a matter of seconds. Following argument, the motion to suppress was denied.

[Appellant] proceeded to trial and on March 26, 2015, a mistrial was declared due to a hung jury. Following numerous continuances, a second jury was empaneled and trial commenced on September 13, 2016. At the conclusion of trial, [Appellant] was found guilty of firearms not to be carried without a license and carrying firearms on public streets or public property in Philadelphia. After the jury exited the courtroom, Counsel stipulated that there was a predicate offense charge of robbery that [Appellant] was previously convicted of and this [c]ourt found [Appellant] guilty of person not to possess or control a firearm. Sentencing was deferred pending the completion of a pre-

sentence report. On December 14, 2016, this [c]ourt sentenced [Appellant] to an aggregate term of eight and one-half (8 1/2) to seventeen (17) years of incarceration followed by five (5) years of probation.[4]

> [4] [Appellant] was sentenced to [a] term of five (5) to ten (10) years of incarceration on the charge of person not to possess or control a firearm; three and one-half ($3^{1}/_{2}$) to seven (7) years of incarceration on the charge of firearms not to be carried without a license; followed by five (5) years of probation on the charge[] of carrying firearms on public streets or public property in Philadelphia.

> Thereafter [Appellant] filed a motion for Modification of Sentence which was denied by operation of law on April 21, 2017. A timely Notice of Appeal to the Superior Court was filed on May 5, 2017. On May 11, 2017, this [c]ourt filed an Order requesting [Appellant] to file a Statement of Matters Complained of on Appeal pursuant to PA. R.A.P. Rule 1925 (b). On June 1, 2017, [Appellant] filed a Request for Extension of Time to File a Supplemental Statement of Errors Upon Receipt of all Notes of Testimony which was granted. Following the receipt of the notes of testimony, on September 10, 2018, a statement was filed on behalf of [Appellant].

Trial Court Opinion, 10/3/18, at 1-3 (internal citations omitted). The trial court filed its opinion pursuant to Pa.R.A.P. 1925(a).

Appellant presents the following issue for our review: "Did not the lower court err by denying suppression of the physical evidence obtained after the police, acting on an anonymous tip, improperly seized [Appellant] in the absence of reasonable suspicion or probable cause, resulting in the forced abandonment of a gun?" Appellant's Brief at 3. Specifically, Appellant argues that "[he] was seized by the police without reasonable suspicion or probable cause, which seizure resulted in the forced abandonment of a handgun.

Consequently, the [trial] court improperly denied suppression of that handgun." *Id.* at 13.

"When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate." *Commonwealth v. Foglia*, 979 A.2d 357, 360 (Pa. Super. 2009) (*en banc*). "Where the Commonwealth prevailed on the suppression motion, we consider only the evidence of the prosecution and so much of the defense that remains uncontradicted." *Commonwealth v. Cooper*, 994 A.2d 589, 591 (Pa. Super. 2010).

> With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented.

*Commonwealth v. Swartz*, 787 A.2d 1021, 1023 (Pa. Super. 2001) (*en banc*). To the extent that the suppression court's factual findings are supported by the record, "we are bound by those facts and will only reverse if the legal conclusions are in error." *Cooper*, 994 A.2d at 591. As an appellate court, it is our duty "to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Maldonado*, 14 A.3d 907, 910 (Pa. Super. 2011) (citation omitted). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

This Court has stated the following with regard to interactions between police officers and the public:

> The investigation of possible criminal activity invariably brings police officers in contact with members of the public. Depending on the circumstances, a police-citizen encounter may implicate the liberty and privacy interests of the citizen as embodied in both the federal constitution, *see* U.S. Const. art. IV, and our state constitution, *see* Pa. Const. art. I, § 8.3. The law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention, often described as a *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); and (3) a custodial detention.

*Commonwealth v. Mackey*, 177 A.3d 221, 226-227 (Pa. Super. 2017) (internal citations and footnote omitted).

> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond, and therefore need not be justified by any level of police suspicion.
>
> In contrast, an 'investigative detention' ... carries an official compulsion to stop and respond .... Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. [. . . .]
>
> Finally, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest. This level of interaction requires that the police have probable cause to believe that the person so detained has committed or is committing a crime.

*Id.* at 227.

> Determining [the point of detention] with precision is crucial to the constitutional analysis because the police must have reasonable suspicion at the moment of detention; information

developed **after** a police-citizen encounter moves from consensual to coercive cannot be used to justify the detention.

*Mackey*, 177 A.3d at 228 (internal footnote omitted) (emphasis in original).

> An investigative detention constitutes a seizure of a person and activates the protections of the Fourth Amendment. To determine whether and when a seizure has occurred, we employ an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained .... In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Id.* at 228 (internal citations and quotations omitted).

Here, the testimony provided at the suppression hearing is crucial to the determination of when the detention occurred. Officer Felici testified for the Commonwealth and provided the following testimony. At the time of the incident, Officer Felici was patrolling with his partner, Officer Holland, in uniform and in a marked police car. N.T., 3/24/15, at 13. While patrolling, the officers received a call *via* police radio regarding a person with a gun on the 800 block of Granite Street. *Id.* at 14-15. The flash information indicated that the individual with the gun was an Asian male wearing a black and red sweat suit and accompanied by a black male. *Id.* at 14. After receiving the call, the officers proceeded to the 800 block of Granite Street. *Id.* at 14. The area was known as a high crime area where Office Felici had made arrests in the past for crimes of aggravated assault, guns, and narcotics. *Id.* at 15.

Officer Felici testified that once they arrived at the 800 block of Granite Street, they pulled up to the intersection of Trotter and Granite Streets, and on the corner, he observed Appellant wearing a black and red sweat suit. N.T., 3/24/15, at 16. Officer Felici explained that upon arriving, he exited the vehicle and pulled out his weapon due to the report that Appellant had a weapon. *Id.* at 16-17. Upon Officer Felici exiting the vehicle and drawing his weapon, Appellant started to turn and walk in the opposite direction. *Id.* at 17, 28. While Appellant was walking away, Officer Felici told Appellant to show his hands because the officer could see only Appellant's left hand. *Id.* at 18. Appellant stepped off of the curb and stood between two parked cars. *Id.* at 18. Officer Felici testified that the above-referenced series of events occurred very quickly, taking only "seconds." *Id.* at 18.

While Appellant was standing between the parked cars, Officer Felici again told Appellant to raise his hands. N.T., 3/24/15, at 19. Appellant raised his left hand, but Officer Felici still could not see Appellant's right hand. *Id.* at 19. Officer Felici testified that he heard a large metal object hit the ground, and Appellant then raised his right hand above his head. *Id.* at 20. Upon hearing the metal object hit the ground, and based on his personal experience, Officer Felici believed the object to be a gun. *Id.* at 20. After placing Appellant in custody, Officer Felici found a gun on the street between the two parked cars where Appellant had been standing. *Id.* at 21.

The trial court found Officer Felici's testimony to be credible and explained its decision denying the suppression motion as follows:

> I'm denying the motion. I find the officer credible. I find the following facts [. . . .] This is a complete match of a radio call **description detailed in sorts**: Asian with black male as well as the notable coloring of the sweat suit referred to by the officer, which matches the information. They were responding in uniform in a marked vehicle. They are responding to a neighborhood that has been afflicted with a high crime area. There is a good reason for concern due to the nature of the call.
>
> [Appellant's] response to viewing a marked vehicle and or police officers in uniform is to attempt to exit the area. His movement in response to the officers' direction to simply show his hands so that he didn't have to be concerned about his own safety, was to refuse that. The clank was a recognizable sound, a dropping of a firearm, when [sic] raises the height of concern for that officer as well as it should to any reasonable human being. And as such, he had every right in the world to temporarily detain him and retrieve the firearm. Voluntarily abandonment, motion is denied.

N.T., 3/24/15, at 36-37 (emphasis in original).

In its Pa.R.A.P. 1925(a) opinion, the trial court further stated that the following facts were proven at the hearing:

> Officer Felici observed [Appellant], who matched the exact description contained in the flash information. Officer Felici exited his vehicle and pulled his weapon; [Appellant] who had looked at Officer Felici exiting his vehicle, began to turn and walk eastbound on Granite Street.

Trial Court Opinion, 10/3/18, at 2.

Thus, the trial court determined that Officer Felici had his weapon drawn when he exited the vehicle, and this factual determination was supported by

the evidence presented at the suppression hearing.[1] Despite this, the trial court concluded that the initial interaction was a mere encounter, and that the interaction did not rise to the level of an investigative detention until the officer heard the clank of the gun as Appellant dropped it to the ground. *Id.* at 8-12. This was error. Based on the facts as found by the trial court, Appellant would not have felt free to walk away from the officers when Officer Felici drew his gun, and Appellant was subjected to an investigative detention at that point. *Mackey*, 177 A.3d at 228. Thus, we conclude that Appellant was seized at the time that Officer Felici exited the vehicle with his gun drawn. Accordingly, the officers were required to have reasonable suspicion to support that detention. *Id.* at 227.

Our Supreme Court recently emphasized that reasonable suspicion means the officer must reasonably suspect that an individual is committing or has committed a criminal offense. *Commonwealth v. Hicks*, 208 A.3d 916, 933 (Pa. 2019). The Court stated that "a police officer may [not] infer criminal activity merely from an individual's possession of a concealed firearm in public." *Id.* at 936. Thus, the fact that a person is carrying a firearm cannot form by itself a "particularized and objective basis for suspecting the particular

---

[1] We note that the trial court also stated that "Officer Felici pulled his weapon in response to [Appellant's] starting to turn to walk away and because Officer Felici could only see [Appellant's] left hand; he had put the right hand in his pocket." Trial Court Opinion, 10/3/18, at 8. However, this statement is not supported by the record.

person stopped of criminal activity." *Id.* at 939 (citing *U.S. v. Cortez*, 449 U.S. 411, 417-418 (1981)). Furthermore, this Court has held that an anonymous tip describing a person with a gun in a particular location, even if the tip accurately describes the person in a high crime area, is not enough to constitute reasonable suspicion. *Mackey*, 177 A.3d at 231-232 (an anonymous tip that a particular person in a particular location is carrying a firearm does not, by itself, establish reasonable suspicion for an investigative detention.)

As noted, Appellant was seized when Officer Felici exited his vehicle with his gun drawn in order to engage Appellant. The only information Officer Felici had at the time of that seizure was an anonymous tip that described Appellant in a high crime area and indicated he had a gun. Pursuant to *Hicks* and *Mackey*, this information alone was insufficient to establish reasonable suspicion. Accordingly, Officer Felici's seizure of Appellant was unlawful.

Furthermore, this unlawful activity caused Appellant to abandon the gun. Because Appellant's abandonment of the firearm resulted from illegal police conduct, the gun should have been suppressed. *See Commonwealth v. Byrd*, 987 A.2d 786, 791 (Pa. Super. 2009) (stating "Although abandoned property may normally be obtained and used for evidentiary purposes by the police, such property may not be utilized where the abandonment is coerced by unlawful police action."). As a result, we are compelled to conclude that the trial court erred in denying Appellant's motion to suppress this physical

evidence. On this basis, we reverse the order denying Appellant's suppression motion, and we vacate the judgment of sentence and remand for further proceedings.

Order denying motion to suppress reversed. Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/14/19