J-S03025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                      :            PENNSYLVANIA
                                                      :
              v.                                    :
                                                      :
                                                      :
                                                      :
CHARLES SHAUN STEIGERWALD   :
                                                      :
              Appellant                      :   No. 875 WDA 2021

Appeal from the Judgment of Sentence Entered July 16, 2021
In the Court of Common Pleas of Crawford County
Criminal Division at No(s): CP-20-CR-0000388-2020

BEFORE:   LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED: APRIL 13, 2022**

Charles Shaun Steigerwald appeals from the judgment of sentence imposed following his convictions for homicide by vehicle while driving under the influence ("DUI"),[1] two counts of DUI, and one count each of driving on right side of highway, driving on roadways laned for traffic, and careless driving. We affirm.

The facts relevant to our analysis are as follows.[2] At approximately 8:44 a.m. on December 6, 2019, Steigerwald was driving a truck on State Highway 18, a two-lane roadway. Steigerwald left his lane of travel, entered the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 75 Pa.C.S.A. §§ 3735(a), 3802(d)(1)(ii), (2), 3301(a), 3309(1), 3714.

[2] Because the sole issue on appeal concerns the trial court's suppression ruling, our review is limited to the suppression record. **See In re L.J.**, 79 A.3d 1073, 1087 (Pa. 2013) (holding that the scope of reviewing a suppression order is limited to the evidentiary record created at the suppression hearing).

oncoming lane of traffic, and struck a vehicle driven by David Davis. Davis died at the scene.

Pennsylvania State Trooper Samuel Hubbard ("Trooper Hubbard") arrived at the scene approximately twenty minutes after the accident and began his investigation.[3] An eyewitness reported that she saw Steigerwald leave his lane of travel for no apparent reason, and that although Davis swerved right to avoid the collision, Steigerwald made no attempt to avoid the crash.

Trooper Hubbard also interviewed Steigerwald at the scene. He suspected that Steigerwald was under the influence of a controlled substance because Steigerwald was confused and unable to remember what led to the accident. Application for Search Warrant, 12/9/19, at 2-3. Steigerwald was transported for treatment at UPMC Hamot, where medical personnel drew blood samples. *Id*. at 3. At the hospital, Steigerwald told another state trooper that "he did have a good night's sleep the evening before, no alcohol to drink and does not take medications." *Id.*

_____

[3] Trooper Hubbard was a Pennsylvania State Trooper for three years at the time of the accident, trained in the investigation of motor vehicle crashes, accident reconstruction, and the detection of violations of the DUI laws. He had conducted or assisted in "numerous" crash investigations resulting in the arrest of the drivers for ingesting alcohol and drugs. Application for Search Warrant, 12/9/19, at 2.

As a part of his investigation, Trooper Hubbard interviewed Steigerwald's sister that day. Steigerwald's sister told him that Steigerwald had a history of alcoholism and suffered seizures when he stayed sober.[4]

Based on this information, Trooper Hubbard applied for a search warrant to obtain Steigerwald's blood samples from UPMC Hamot. *See id*. at 1. The application and authorization form contained Trooper Hubbard's affidavit of probable cause. At the conclusion of his affidavit of probable cause, Trooper Hubbard requested a search warrant for the seizure of the following:

> actual blood vials containing blood taken from patient, Charles STEIGERWALD, who was treated on 12/06/19 at UPMC Hamot Medical Center for motor vehicle crash related injuries. **The vials of blood will be sent to the Pennsylvania State Police laboratory to be tested for controlled substances. The purpose is to determine if STEIGERWALD was on any type of seizure medication which would prohibit him from operating a motor vehicle in a safe manner.**

*Id*. (emphasis added). A magisterial district judge authorized the search warrant, and the Pennsylvania State Police obtained Steigerwald's blood samples. Testing revealed that the samples contained amphetamine and methamphetamine.

Steigerwald filed a pretrial motion seeking to suppress the blood test results. He did not challenge the probable cause to seize or test the samples from UPMC Hamot. He challenged the scope of the testing the warrant authorized. Specifically, Steigerwald claimed that Trooper Hubbard "was

---

[4] Steigerwald's sister also told Trooper Hubbard that Steigerwald was diagnosed with a concussion at UPMC Hamot.

specific [that] the drugs he would be testing for were anti-seizure drugs," and that tests for any other drugs "f[ell] outside the scope of the search warrant." Omnibus Pretrial Motion, 8/14/20, at ¶¶ 3-4.

The trial court held a suppression hearing, and at the conclusion of the hearing, the trial court directed the parties to file briefs. In his brief, Steigerwald claimed that there was an unreasonable discrepancy between the items for which there was probable cause and the description in the warrant. He asserted that Trooper Hubbard did not include in his warrant application "the description of any specific substances to be searched [for]," but "describe[d] seizure medications as the item he believe[d] there [was] probable cause for which to search . . .." Brief in Support of Suppression, 10/30/20, at 4 (unpaginated).

The trial court denied Steigerwald's motion, and thereafter conducted a stipulated bench trial in which Steigerwald was found guilty of the above-listed offenses. The trial court sentenced Steigerwald to three to ten years of imprisonment for homicide by vehicle while DUI. Steigerwald did not file post-sentence motions, but timely appealed, and both he and the trial court complied with Pa.R.A.P. 1925.

Steigerwald raises the following issue for our review:

Did the trial court commit reversable error when it refused to suppress evidence when it resulted in the Commonwealth seizing evidence that was in excess [of] both the evidence requested in the trooper's application and the language of the warrant[?]

Steigerwald's Brief at 2 (some capitalization omitted).

Steigerwald's appellate claim asserts error in the trial court's ruling concerning the scope of the search of the blood sample. The standard governing our review of the denial of a motion to suppress is well-settled: "When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate." **Commonwealth v. Foglia**, 979 A.2d 357, 360 (Pa. Super. 2009) (*en banc*) (internal citations omitted)). "Where the Commonwealth prevailed on the suppression motion, we consider only the evidence of the prosecution and so much of the defense that remains uncontradicted." **Commonwealth v. Cooper**, 994 A.2d 589, 591 (Pa. Super. 2010) (internal citation omitted). If the trial court's factual findings are supported by the suppression record, "we are bound by those facts and will only reverse if the legal conclusions are in error." **Id**. (internal citation omitted).

The taking and testing of a person's blood constitutes a search. **See Commonwealth v. Trahey**, 228 A.3d 520, 530 (Pa. 2020); **Commonwealth v. Cieri**, 499 A.2d 317, 321 (Pa. Super. 1985). Absent an applicable exception, the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution require that before conducting a search, the police obtain a warrant, supported by probable cause and issued by an independent judicial officer. **See Commonwealth v. Dougalewicz**, 113 A.3d 817, 824 (Pa. Super. 2015).

As to the scope of a search warrant, this Court has explained that a warrant must describe with particularity the property to be searched. A warrant cannot be so ambiguous as to allow the officers executing the warrant to "pick and choose" among an individual's possessions. **Commonwealth v. Orie**, 88 A.3d 983, 1002-03 (Pa. Super. 2014). The Pennsylvania Constitution requires the description of the item to be searched to be as particular as is reasonably possible. **See id**. In assessing a warrant's validity, a court first determines for what items probable cause existed. It then measures the sufficiency of the description against the items for which there was probable cause. Where there is an unreasonable discrepancy between the items for which there was probable cause and the description in the warrant, *i.e.*, the description was not as specific as was reasonably possible, the evidence will be suppressed. **See id**. Notably, however, search warrants are to be read in a commonsense fashion. **See Commonwealth v. Leed**, 186 A.3d 405, 413 (Pa. 2018). They are not to be invalidated by "hypertechnical interpretations." **Id**.

Here, Steigerwald asserts that there is an unreasonable discrepancy between Trooper Hubbard's affidavit of probable cause and the items described in the warrant, namely, the substances for which the blood was tested. Steigerwald's Brief at 3. Steigerwald emphasizes that Trooper Hubbard requested testing to detect seizure medication, but the state police tested his blood sample for "street drugs" unrelated to seizures. **Id**. at 4.

The trial court explained its denial of Steigerwald's motion to suppress the blood test results by noting that the affidavit supporting the search warrant expressly contemplated testing "for controlled substances." Trial Court Opinion, 11/19/20, at 4. The court noted that Steigerwald relied upon the final sentence of Trooper Hubbard's request in asserting that the Commonwealth was authorized to test his blood only for "anti-seizure drugs." *Id*. However, the trial court stated that the warrant authorized the seizure of the blood vials, and that the supporting affidavit expressly stated that their contents were to be tested for controlled substances. Steigerwald did not dispute the existence of probable cause to test his blood samples. The trial court therefore held that in the absence of a recognized list of those substances which might have affected Steigerwald's seizure threshold, that the "[w]arrant was sufficient to authorize testing for all controlled substances, including amphetamines and meth[amphetamines]." *Id*. at 4-5.

As the trial court explained, Trooper Hubbard's affidavit requested seizing and testing of Steigerwald's blood for all "controlled substances." *See* Trial Court Opinion, 11/19/20, at 5; Application of Search Warrant, 12/9/19, at 4. Thus, there was no unreasonable discrepancy between the items for which there was probable cause and the description in the search warrant. The trial court's factual findings are supported by the suppression record, and we discern no error in the court's legal conclusions. *See Cooper*, 994 A.2d at 591.

Steigerwald's arguments regarding the scope of the warrant and alleging an unreasonable discrepancy ignore the operative language in the affidavit of probable cause requesting testing for "controlled substances." Ignoring entirely the language of the affidavit requesting that the blood be searched for "controlled substances," Steigerwald focuses exclusively on the statement in the affidavit that the purpose of the testing was "to determine if Steigerwald was on any type of seizure medication which would prohibit him from operating a motor vehicle in a safe manner." Steigerwald's Brief at 5 (quoting Application for Search Warrant, 12/9/19, at 4). However, as the trial court noted, Steigerwald also failed to establish that amphetamines or methamphetamines were substances that fell outside the scope of substances that could related to seizures. **See** Trial Court Opinion, 11/19/20, at 5-6. We agree with the trial court that the reference to seizure medications in the search warrant, when read in a commonsense fashion, did not create an unreasonable discrepancy between the items for which there was probable cause and the description in the search warrant. **See id.**; **Orie**, 88 A.3d at 1002-03. Therefore, Steigerwald's claim fails.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2022

- 8 -