J-S60008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARLES DENNIS GERBER | : | |
| | : | |
| Appellant | : | No. 519 MDA 2018 |

Appeal from the Judgment of Sentence March 26, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000189-2017

BEFORE:   SHOGAN, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                **FILED: OCTOBER 17, 2018**

Appellant, Charles Dennis Gerber, appeals from the judgment of sentence entered following his convictions of driving under the influence ("DUI") of a controlled substance and careless driving.[1]  We affirm.

This appeal stems from charges of DUI and careless driving filed against Appellant for events that occurred on August 26, 2016.  On that date at approximately 6:07 p.m., Officer Michael Jordan of the West Manchester Township Police Department was dispatched to Taxville Road, York County, to investigate an automobile accident involving a vehicle in a field.  N.T., Suppression Hearing, 4/25/17, at 4-6.  When Officer Jordan arrived at the scene, he explained what he observed as follows:

_____

[1] 75 Pa.C.S. §§ 3802(d)(1)(iii) and 3714(a), respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

I was dispatched there for a vehicle out into a field. I arrived, the vehicle was approximately probably 1,000 feet out across the field. I noticed where the vehicle appeared to be traveling westbound in the area of 1602 Taxville Road.

So it would've went [sic] across the eastbound lanes from the westbound lanes, hit a small embankment, I would say, three to four feet. It appears the vehicle then got almost ramped or got thrown into the air and came down into the blacktop of the driveway, leaving several gouge marks, and then continued up a small grass embankment out through the person's lawn and into the neighboring property, which is a field – a grass field, which has a couple strands of wire out there for electrical fencing for cattle.

It continued through two sets of that and then into the next field and was sitting out there in the field.

*Id.* at 6.

Upon approaching the vehicle, Officer Jordan observed that Appellant was in the driver's seat of the vehicle, but was slumped over into the passenger's seat. N.T., Suppression Hearing, 4/25/17, at 7-8. The vehicle was still running and in drive gear. *Id.* at 9. Appellant was unconscious and had saliva and blood coming from his mouth. *Id.* There was an odor of feces, and it was determined that Appellant had defecated. *Id.* Officer Jordan testified that he was able to slightly awaken Appellant, and described Appellant's condition as follows: "He was very lethargic, unable to complete sentences or words. I mean, he was very slurred. He looked scared as to why we were there. He just had, like, this blank stare, and he then would just go back out. His eyes just kept blinking." *Id.* At that point, Officer Jordan was unsure whether the accident was caused by Appellant having a medical

condition or by DUI. *Id.* at 10. The weather conditions on that date and at that time were favorable: there was no rain, and it was still light out, as it was approximately 6:00 p.m. in August. *Id.* at 10-11. EMS personnel arrived on the scene and transported Appellant to York Hospital by ambulance. *Id.* at 10-12.

Officer Jordan proceeded to the hospital, where he attempted to speak with Appellant. N.T., Suppression Hearing, 4/25/17, at 12. When Officer Jordan attempted to interact with Appellant at the hospital, it became clear to Officer Jordan that Appellant was still incoherent and slurring his words. *Id.* at 13. Officer Jordan did not attempt to obtain consent for testing at that point due to Appellant's incapacity. *Id.*

Officer Jordan subsequently applied for a search warrant to obtain Appellant's blood sample and records from York Hospital. N.T., Suppression Hearing, 4/25/17, at 15. The search warrant was issued, and Officer Jordan served it on York Hospital's Blood Laboratory. *Id.* at 16. On September 28, 2016, York Hospital sent to Officer Jordan through NMS Laboratory the results of the test. *Id.* The test reflected positive findings for Alprazolam[2] and Benzoylecgonine.[3] *Id.* at 16.

---

[2] Alprazolam is Xanax. N.T., Suppression Hearing, 4/25/16 at 17.

[3] Benzoylecgonine is a metabolite of cocaine. N.T., Suppression Hearing, 4/25/16, at 18.

On November 7, 2016, Officer Jordan filed a criminal complaint against Appellant charging him with multiple charges of DUI and careless driving. On January 10, 2017, following a preliminary hearing, Appellant's charges were bound over to the York County Court of Common Pleas. Appellant was arraigned on February 24, 2017, and Attorney Joseph N. Gothie entered his appearance. Appellant filed a suppression motion on March 20, 2017, and on April 25, 2017, a suppression hearing took place. Following the hearing, Appellant's suppression motion was denied. On December 1, 2017, Attorney Gothie was permitted to withdraw his appearance, and Appellant's current counsel, Attorney Jeffrey Marshall, entered his appearance.

A jury trial was held on January 10 and January 11, 2018. Appellant was convicted of DUI of a controlled substance[4] and the summary offense of careless driving.[5] On March 26, 2018, Appellant was sentenced on the DUI conviction to five years of county intermediate punishment, that included 180 days of electronically monitored house arrest and drug testing, plus the

---

[4] Appellant had three charges of DUI filed against him. Criminal Information, 2/14/17, at 1-2. Prior to charging the jury, the Commonwealth withdrew Count 1, filed pursuant to 75 Pa.C.S. § 3802(d)(1)(ii). N.T., Jury Trial, 1/10-11/18, at 99-100. After the jury returned a verdict of guilty on Count 4, filed pursuant to 75 Pa.C.S. § 3802(d)(1)(iii), *id.* at 138, the jury indicated that it was unable to reach a verdict on Count 2, filed pursuant to 75 Pa.C.S. § 3802(d)(2). *Id.* at 137, 141. The Commonwealth then *nol prossed* Count 2. *Id.* at 143.

[5] 75 Pa.C.S. § 3714(a). Because this charge was a summary offense, the trial court served as the trier of fact and found Appellant guilty of this offense. N.T., Jury Trial, 1/10-11/18, at 144-145.

- 4 -

payment of costs and a fine of $1,500.00. N.T., 3/26/18, at 7. A $25.00 fine plus costs was imposed for the careless driving violation. *Id.*

Appellant filed his notice of appeal on March 27, 2018. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, and on April 20, 2018, Appellant complied. On April 24, 2018, Appellant filed a motion for permission to file an amended Pa.R.A.P. 1925(a) statement, plus an extension of time for filing because the transcripts had not yet been produced. The trial court granted Appellant's request, and on June 1, 2018, Appellant filed an amended Pa.R.A.P. 1925(b) statement. The trial court issued a Pa.R.A.P. 1925(a) opinion on June 5, 2018.

Appellant presents the following issues for our review:

    A.    Whether the trial court erred in denying the motion to suppress medical blood samples and chemical test results based upon the seizure of the samples exceeding the scope of the search warrant?

    B.    Whether the trial court erred in denying the motion to suppress medical blood samples and chemical test results based upon the lack of probable cause, specifically of any violation of 75 Pa.C.S. Section 3802, as expressly provided in the search warrant?

    C.    In the alternative, whether the trial court erred in denying the motion to suppress medical blood samples and chemical test results based upon the lack of probable cause, specifically of any violation of 75 Pa.C.S. Section 3802, to support the seizure of the medical blood samples and chemical test results under 75 Pa.C.S. Section 3755?

Appellant's Brief at 7.

"When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate." **Commonwealth v. Foglia**, 979 A.2d 357, 360 (Pa. Super. 2009) (*en banc*). "Where the Commonwealth prevailed on the suppression motion, we consider only the evidence of the prosecution and so much of the defense that remains uncontradicted." **Commonwealth v. Cooper**, 994 A.2d 589, 591 (Pa. Super. 2010).

> With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented.

**Commonwealth v. Swartz**, 787 A.2d 1021, 1023 (Pa. Super. 2001) (*en banc*). To the extent that the suppression court's factual findings are supported by the record, "we are bound by those facts and will only reverse if the legal conclusions are in error." **Cooper**, 994 A.2d at 591. As an appellate court, it is our duty "to determine if the suppression court properly applied the law to the facts." **Commonwealth v. Maldonado**, 14 A.3d 907, 910 (Pa. Super. 2011). Moreover, we note that our scope of review from a suppression

ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1086-1087 (Pa. 2013).[6]

In his first issue, Appellant argues that seizure of the blood samples from York Hospital exceeds the scope of the search warrant. Appellant's Brief at 17. Appellant asserts that the search warrant identifies "any and all medical records in the custody of York Hospital Laboratory containing the results of the blood alcohol content" of Appellant. *Id.* Appellant maintains that Officer Jordan intended to obtain the actual blood sample taken from Appellant, but despite this intention, completed the warrant asking for medical records containing the results of the blood alcohol content. *Id.* at 18. Appellant contends that no such medical records existed and no blood alcohol testing had been performed by the hospital. *Id.* Instead, Officer Jordan seized the blood-draw samples and had the samples sent to NMS Labs for testing. *Id.* The blood samples are not items that were specifically described and authorized to be seized on the search warrant. *Id.* Appellant maintains that

_____

[6] In *L.J.*, our Supreme Court held that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *L.J.*, 79 A.3d at 1087. Prior to *L.J.*, this Court routinely held that, when reviewing a suppression court's ruling, our scope of review included "the evidence presented both at the suppression hearing and at trial." *Commonwealth v. Charleston*, 16 A.3d 505, 516 (Pa. Super. 2011) (quoting *Commonwealth v. Chacko*, 459 A.2d 311 (Pa. 1983)). *L.J.* thus narrowed our scope of review of suppression court rulings to the evidence presented at the suppression hearing. In this case, Appellant's suppression hearing was held after *L.J.* was decided. Therefore, the procedural rule announced in *L.J.* applies to the case at bar.

the blood-draw samples were not included in the search warrant, and thus, such seizure was unlawful. *Id.* at 19-20. Appellant argues that the trial court erred in denying his motion to suppress on these grounds. *Id.* at 20.

> In general, the Fourth Amendment of the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution, do not permit police to search for or seize property absent a lawfully obtained search warrant. For a search to be reasonable under the Fourth Amendment or Article I, Section 8, police must obtain a warrant, supported by probable cause and issued by an independent judicial officer, prior to conducting the search.

*Commonwealth v. Dougalewicz*, 113 A.3d 817, 824 (Pa. Super. 2015) (internal citations and quotation marks omitted).

In addressing the validity and purview of a warrant, this Court has explained:

> It is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched.... The particularity requirement prohibits a warrant that is not particular enough and a warrant that is overbroad. These are two separate, though related, issues. A warrant unconstitutional for its lack of particularity authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize. This will result in the general 'rummaging' banned by the Fourth Amendment. A warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation .... An overbroad warrant is unconstitutional because it authorizes a general search and seizure.
>
> * * *
>
> The language of the Pennsylvania Constitution requires that a warrant describe the items to be seized "as nearly as may be...." The clear meaning of the language is that a warrant must describe

- 8 -

the items as specifically as is reasonably possible. This requirement is more stringent than that of the Fourth Amendment, which merely requires particularity in the description. The Pennsylvania Constitution further requires the description to be as particular as is reasonably possible.... Consequently, in any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for which there was probable cause and the description in the warrant requires suppression. An unreasonable discrepancy reveals that the description was not as specific as was reasonably possible.

*Commonwealth v. Orie*, 88 A.3d 983, 1002-1003 (Pa. Super. 2014). Furthermore, "the Pennsylvania Supreme Court has instructed that search warrants should be read in a common sense fashion and should not be invalidated by hypertechnical interpretations." *Id.* at 1003.

The search warrant at issue in this case included the following information, in relevant part:

IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED;

Any and all medical records in the custody of York Hospital Laboratory containing the results of the blood alcohol content (BAC) of [Appellant], while the subject was a patient of York Hospital as a result of a motor vehicle collision on 08/26/2016.

SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED

York Hospital Records Department located at 1001 S. George St, York PA 17402. Any and all records for blood alcohol content (BAC) results for [Appellant].

NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED

Custodian of the medical records at York Hospital located at 1001 S. George St. York PA 17402. This Affiant request[s] the medical blood sample obtained from [Appellant] on 8/26/2016 be sent to NMS Labs to determine the BAC/drug result.

Search Warrant, 9/14/16, at 1-2 (explanatory notes omitted).

As noted, the search warrant includes the following language in the section identifying the "name of owner, occupant or possessor of said premises to be searched": "**This Affiant requests the medical blood sample obtained from [Appellant] on 8/26/2016 be sent to NMS Labs to determine the BAC/drug result**." Warrant, 9/14/16, at 1–2 (emphasis added). Furthermore, the affidavit supporting the search warrant included the following statement: "I request that the medical blood obtained by York Hospital Staff on 08/26/016 [sic] for [Appellant] be sent to NMS Labs to determine the blood alcohol content/drugs." Affidavit of Probable Cause, 9/14/16, at 1.

Thus, although the first section of the warrant identifying the items to be searched and seized states, "Any and all medical records in the custody of York Hospital Laboratory containing the results of the blood alcohol content (BAC) of [Appellant]," the above-cited language regarding the **blood sample** was also included in the warrant, albeit in a separate location. Furthermore, Appellant's blood sample was specifically identified, and the warrant specified that the sample should be sent to NMS Laboratory for BAC/drug testing. Thus, we conclude that the blood sample was within the scope of the search warrant. Accordingly, we decline Appellant's request to find the warrant was invalid,

based upon his proposed hypertechnical interpretation. *Orie*, 88 A.3d at 1003. The trial court did not err in denying Appellant's suppression motion on this basis. Appellant is entitled to no relief on this claim.

In his second issue, Appellant assets that the trial court erred in denying the motion to suppress the results of the blood samples, asserting there was a lack of probable cause that Appellant was driving while under the influence. Appellant's Brief at 20. Specifically, Appellant maintains that the search warrant and supporting affidavit lack sufficient probable cause for a violation of 75 Pa.C.S. § 3802 (relating to driving under the influence of alcohol or a controlled substance) "since there is no indication of alcohol consumption or consumption of a controlled substance." Appellant's Brief at 22. Appellant posits that the facts set forth in the affidavit, regarding Appellant's condition as observed by Officer Jordan, do not support the conclusion that Appellant had used drugs or alcohol. *Id.* at 23. In fact, Appellant argues that because while at the hospital he denied using drugs or alcohol, such statement should lead to the conclusion "that no drugs or alcohol were involved and would not support any probable cause on behalf of the officer." *Id.* Thus, Appellant maintains that "the important and essential element of drug or alcohol consumption is not supported in the affidavit of probable cause." *Id.*

We review the issuing authority's decision in light of the totality of the circumstances:

> Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in *Illinois v. Gates*, 462 U.S.

213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the task of an issuing authority is simply to make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Commonwealth v. Janda*, 14 A.3d 147, 157 (Pa. Super. 2011).

It is hornbook law that search warrants may only issue upon probable cause and the issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits. Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted. The affidavit of probable cause must provide the magistrate with a substantial basis for determining the existence of probable cause.

*Commonwealth v. Leed*, 186 A.3d 405, 413 (Pa. 2018) (internal citations

and quotation marks omitted).

Regarding probable cause, we note:

"Probable cause does not involve certainties, but rather 'the factual and practical considerations of everyday life on which reasonable and prudent men act.'" *Commonwealth v. Wright*, 867 A.2d 1265, 1268 (Pa.Super.2005) (quoting *Commonwealth v. Romero*, 673 A.2d 374, 376 (1996)). "It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause." *Commonwealth v. Monaghan*, 441 A.2d 1318 (1982) (citation omitted). *See also Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (holding that probable cause means "a fair probability that contraband or evidence of a crime will be found."); *Commonwealth v. Lindblom*, 854 A.2d 604, 607 (Pa.Super.2004) (reciting that probable cause exists when criminality is one reasonable inference, not necessarily even the most likely inference).

*Commonwealth v. Jones*, 121 A.3d 524, 528 n.5 (Pa. Super. 2015).

Furthermore,

The Supreme Court of the United States has instructed that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. Indeed, a magistrate's probable cause determination should receive deference from the reviewing courts.

*Leed*, 186 A.3d at 413 (internal citations and quotation marks omitted).

Here the affidavit of probable cause stated the following:

On 08/26/2016, at approximately 18:07 hours, this Affiant was dispatched to the area of the 1600 block of Taxville Rd. for a motor vehicle collision with the damaged vehicle approximately 1000' off the roadway out in a field.

I approached the vehicle in full police uniform and found the Mitsubishi Outlander with it's [sic] engine running and the vehicle was still in drive. The lone occupant who was occupying the driver's seat was unconscious and slumped into the passenger [seat] while being restrained. I was able to wake the driver who was extremely confused and spoke very slowly and spoke in sentences that did not make sense. The driver also defecated and had slight bleeding coming from his mouth. I requested identification but the driver did not understand the request. I located a PA driver[']s license which identified the driver as [Appellant]. [Appellant] appeared extremely lethargic and unable to speak. [Appellant] was sweating profusely.

I was not able to detect the odor of alcohol but [Appellant's] brother arrived on scene and doubted the accident was alcohol related because [Appellant] is a recovering alcoholic.

I briefly spoke to [Appellant] at York Hospital and he denied drug or alcohol use.

I request that the medical blood obtained by York Hospital Staff on 08/26/[2]016 for [Appellant] be sent to NMS Labs to determine the blood alcohol content/drugs.

Based upon the above facts and statements this Affiant request[s] a search warrant be issued to obtain [Appellant's] BAC results related to this incident.

Affidavit of Probable Cause, 9/14/16, at 1.

As stated in his affidavit, Officer Jordan found Appellant's car crashed into a field approximately 1,000 feet off the roadway. The vehicle was in drive gear, and the engine was still running. Appellant was slumped in the driver's seat, unresponsive. Upon being awakened, Appellant was incoherent and was not able to understand Officer Jordan's requests. Appellant was lethargic, sweating profusely, and had defecated. Thus, the facts and circumstances within Officer Jordan's knowledge are sufficient in themselves to warrant a man of reasonable caution in the belief that Appellant may have been driving under the influence of alcohol or a controlled substance and that a search should be conducted. *Leed*, 186 A.3d at 413. Given the totality of circumstances, this conclusion is certainly one reasonable inference. *Jones*, 121 A.3d at 528 n.5. Thus, we find that the trial court did not err in determining that Officer Jordan's affidavit of probable cause included information sufficient to establish probable cause. Appellant is entitled to no relief on this issue.

In his third issue, Appellant argues:

In the alternative, whether the trial court erred in denying the motion to suppress medical blood samples and chemical test results based upon the lack of probable cause, specifically of any violation of 75 PA.C.S. Section 3802, to support the seizure of the medical blood samples and chemical test results under 75 PA.C.S. Section 3755?

- 14 -

Appellant's Brief at 27 (verbatim). Specifically, Appellant asserts that 75 Pa.C.S. § 3755 does not apply to the facts in the present case because the search warrant obtained by Officer Jordan resulted in seizure of the blood samples. *Id.* Appellant notes that the case does not involve any directive or request by Officer Jordan to obtain test results without a warrant as provided for in 75 Pa.C.S. § 3755. *Id.*

Section 3755 provides, in relevant part, as follows:

**§ 3755. Reports by emergency room personnel**

**(a) General rule.**-If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be determined. Test results shall be released upon request of the person tested, his attorney, his physician or governmental officials or agencies

75 Pa.C.S. § 3755.

There is no evidence in this case that Appellant's blood was drawn pursuant to 75 Pa.C.S. § 3755. In fact, the Commonwealth addresses Appellant's issue with the following statement: "The Commonwealth acknowledges that the seizure of [Appellant's] blood sample and the

introduction of results of testing performed on that sample is not being pursued pursuant to the authorization in 75 PA. CONS. STAT. § 3755." Commonwealth's Brief at 25. As outlined, Section 3755 allows for a warrantless taking of a blood sample. Here, Officer Jordan had a warrant, and as discussed above, the warrant was properly supported by probable cause. Thus, the sample and results were obtainable via the warrant and were properly admitted by the trial court. *See Commonwealth v. Miller*, 996 A.2d 508, 513 (Pa. Super. 2010) ("where a blood draw is conducted for medical purposes, and the results of the blood test are obtained after proper execution of a search warrant, the results of the blood draw are admissible in the prosecution of a DUI defendant."). Accordingly, the trial court did not err in denying the motion to suppress on this basis.[7]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2018

---

[7] We note that if blood had been drawn from Appellant pursuant to 75 Pa.C.S. § 3755, probable cause existed to believe that Appellant was guilty of DUI, as discussed above.